(No. 75716.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JAMES T. FOSTER, Appellant.

*Opinion filed November 30, 1995.—Modified on denial of rehearing January 29, 1996.*

NICKELS, J., took no part.

Phyllis J. Perko, of the Law Offices of Harlovic & Perko, of West Dundee, and Therese G. McGinnis, of Chicago, for appellant.

James E. Ryan, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Arleen C. Anderson and Steven R. Splitt, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE McMORROW delivered the opinion of the court:

A jury in the circuit court of Kane County found defendant, James T. Foster, guilty of first degree murder. Following a hearing, the trial court found defendant eligible for the death penalty because he killed the victim during the course of an aggravated criminal sexual assault. The court further found no mitigating factors sufficient to preclude imposition of the death penalty and sentenced the defendant to death. Defendant's murder conviction and death sentence were affirmed by this court on direct appeal. (*People v. Foster* (1987), 119 Ill. 2d 69.) The defendant's petition for *certiorari* was denied by the United States Supreme Court.

*Foster v. Illinois* (1988), 486 U.S. 1047, 100 L. Ed. 2d 628, 108 S. Ct. 2044.

Thereafter, defendant filed a petition for relief pursuant to the Post-Conviction Hearing Act (Ill. Rev. Stat. 1987, ch. 38, par. 122—1 *et seq.*). Counsel was appointed and an amended post-conviction petition was filed. In his petition for post-conviction relief defendant alleged that: (1) trial counsel was ineffective at the hearing on the defendant's motion to suppress his confession; (2) appellate counsel was ineffective for failing to contest on direct appeal the trial court's finding that the defendant's confession was voluntary; (3) trial counsel was ineffective for failing to challenge the prosecution's medical evidence and for failing to present a defense; (4) appellate counsel was ineffective for failing to raise the issue of ineffective assistance of trial counsel on direct appeal; and (5) trial counsel was ineffective for failing to present evidence of statutory mitigating factors at defendant's sentencing hearing.

The trial court dismissed the amended post-conviction petition without an evidentiary hearing, and defendant appeals.

I

The evidence introduced at trial which led to the defendant's conviction and sentence is summarized as follows. Defendant was convicted for the murder of his girlfriend, Jaquelin Simmons. At the time of the incident, Simmons shared an apartment with Theresa Williams. Williams' trial testimony detailed how defendant used a baseball bat to extensively beat Simmons at the apartment on the night of January 9, 1985. Williams also recounted that at one point during the beating, she went into the living room and saw Simmons lying face down on the floor with the baseball bat inserted in her rectum. Williams testified that defendant began "bragging about how much he put [the bat] up her

rectum and how she took it, and how she pulled it out." When Williams returned to the living room, she found Simmons on the couch breathing irregularly and noticed that defendant was nervous. Williams told defendant that Simmons needed to go to a hospital. However, defendant left the apartment and returned after approximately 20 minutes.

When defendant returned, Williams told him that Simmons was dead, and defendant attempted mouth-to-mouth resuscitation. The defendant told Anthony Lloyd, who had been at the apartment for a portion of the evening, to call the paramedics. Williams testified that the defendant took the bat and "got rid of" his bloody sweat shirt.

Anthony Lloyd testified that he arrived at the apartment of Simmons and Williams at about 11 p.m. on the night Simmons was killed. Lloyd testified that he could hear the defendant hitting Simmons with the bat and saw the defendant holding the broken baseball bat. Lloyd's account of defendant's beating of Simmons was substantially similar to that provided by Williams.

Pathologist Dr. Larry Blum testified at trial that Simmons suffered many blunt-trauma-type injuries over her head, chest, abdomen and legs. He stated that the cause of death was multiple blunt traumas resulting in swelling of the brain and internal hemorrhage.

The morning following Simmons' death, defendant gave authorities a confession in which he admitted that he had beaten Simmons to death. The defendant then signed a written waiver of his *Miranda* rights and a typed confession.

## II

A petition filed under the Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West 1992)) is a collateral attack on the judgment of conviction in which the petitioner attempts to establish constitutional violations

at trial that have not been and could not have been previously adjudicated. (*People v. Brisbon* (1995), 164 Ill. 2d 236, 242; *People v. Thompkins* (1994), 161 Ill. 2d 148, 157.) The petitioner bears the burden of establishing a substantial deprivation of his constitutional rights to be entitled to an evidentiary hearing. (*People v. Albanese* (1988), 125 Ill. 2d 100, 104-05.) We will disturb the trial court's ruling on defendant's petition for post-conviction relief only if manifestly erroneous. *People v. Griffin* (1985), 109 Ill. 2d 293, 303.

The State contends that several of defendant's claims of ineffective assistance of trial counsel have been waived for failure to raise them on direct appeal. The State asserts that the facts necessary to raise several of these issues were present in the trial record and available to defendant on direct appeal, and that defendant has offered no new material to support these ineffective-assistance-of-counsel claims. Defendant replies that these claims were not raised due to ineffective assistance of appellate counsel. The doctrine of waiver does not bar review of an issue when the waiver arises from ineffective assistance of appellate counsel. (*People v. Guest* (1995), 166 Ill. 2d 381, 390; *People v. Winsett* (1992), 153 Ill. 2d 335, 346.) We review the merits of the underlying issues that were not raised on direct review to determine whether appellate counsel's performance was ineffective. We note that unless the underlying issues are meritorious, defendant has suffered no prejudice from counsel's failure to raise them on appeal. *Winsett*, 153 Ill. 2d at 347.

### Ineffective Assistance of Counsel With Respect to Defendant's Motion to Suppress His Confessions

Defendant claims that he was denied his constitutional right to effective assistance of counsel because his trial counsel failed to present evidence to show that his confessions were not voluntary. Defendant also contends

that his appellate counsel was ineffective for failure to contest, on direct appeal, the trial court's ruling that the defendant's confessions were voluntary.

Defendant must meet the two prongs of the *Strickland* test to be successful in his claim of ineffective assistance of counsel. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) The *Strickland* test requires that the defendant show that (1) counsel's performance fell below an objective standard of reasonableness, and that (2) counsel's deficient performance resulted in prejudice to defendant. If the defendant fails to satisfy either prong, his claim of ineffective assistance of counsel must fail. (*Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.) This court need not determine whether counsel's performance was deficient if we decide that the defendant suffered no prejudice from the alleged errors. *Winsett*, 153 Ill. 2d at 347.

Defendant asserts that additional evidence which his trial counsel should have presented at the motion to suppress demonstrated that he was intoxicated, insulin-deprived and coerced by police on the night of the murder, and that these factors rendered his confessions involuntary in violation of the fifth and fourteenth amendments (U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, §§ 2, 10). Defendant also claims that the aforementioned circumstances establish that he did not knowingly and voluntarily waive his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. Defendant argues that his constitutional right to effective assistance of counsel (U.S. Const., amend. VI) was violated because his trial counsel failed to "support the claim of involuntariness with relevant evidence" at his suppression hearing.

A defendant's confession will be considered involuntary only when the defendant's will was overborne at

the time of his confession, such that the confession "cannot be deemed the product of a rational intellect and a free will." (*People v. Kincaid* (1981), 87 Ill. 2d 107, 117; see *Arizona v. Fulminante* (1991), 499 U.S. 279, 113 L. Ed. 2d 302, 111 S. Ct. 1246.) A waiver of *Miranda* rights must be voluntary, and the defendant must be fully aware " ' "both of the nature of the right[s] being abandoned and the consequences of the decision to abandon [them]." ' " (*People v. Scott* (1992), 148 Ill. 2d 479, 509, quoting *Colorado v. Spring* (1987), 479 U.S. 564, 573, 93 L. Ed. 2d 954, 965, 107 S. Ct. 851, 857, quoting *Moran v. Burbine* (1986), 475 U.S. 412, 421, 89 L. Ed. 2d 410, 421, 106 S. Ct. 1135, 1141.) In determining whether a defendant voluntarily gave a confession and knowingly and intelligently waived his *Miranda* rights, courts must consider "the totality of the circumstances, including the characteristics of the defendant and the details of the interrogation." (*People v. Reid* (1990), 136 Ill. 2d 27, 54-55; *People v. Evans* (1988), 125 Ill. 2d 50, 76-77.) Evidence of the defendant's limited mental or intellectual capacity at the time of the confession, alone, does not render his statements involuntary or establish that the defendant was incapable of knowingly and intelligently waiving his *Miranda* rights. Limited intellectual capacity is one of several factors to be considered under the totality of the circumstances. (*People v. Mahaffey* (1995), 165 Ill. 2d 445, 462; *Colorado v. Connelly* (1986), 479 U.S. 157, 164, 93 L. Ed. 2d 473, 482, 107 S. Ct. 515, 520.) The fact that a defendant is under the influence of alcohol or drugs at the time of the confession does not automatically render his statements inadmissible. *People v. Hills* (1980), 78 Ill. 2d 500, 506.

To support his post-conviction claim that his confessions were involuntary, defendant submitted his own affidavit and that of Shari Jordan, who allegedly saw the defendant on the night Simmons was killed. Both af-

fidavits stated that the defendant had been drinking on the night of the murder. Defendant's affidavit further stated that he is a diabetic and that he experiences blackouts, memory loss and loss of consciousness when he drinks alcohol. Additional affidavits of the defendant's friends and family asserted that the defendant habitually abused intoxicants and has a history of head injuries. Defendant notes that he told police that he had consumed "some" alcohol and one-half of a marijuana cigarette on the day of the murder.

Defendant further submitted the report of a clinical psychologist, Dr. Jack Arbit, and the affidavit of a psychiatrist, Dr. Lyle Rossiter. Dr. Arbit examined defendant on November 16, 1989. Dr. Arbit's report notes that, around the time of the murder, defendant was taking his insulin sporadically based on the way he felt. The report further notes that, according to the defendant, when he missed his insulin injections he would become "groggy more easily." The report also discusses the defendant's history of substance abuse and head injuries. Dr. Arbit's report concludes with the opinion that the defendant's "behavior at the time of the murder and [his] judgment relative to his confession were significantly impaired by factors interfering with the normal functioning of the brain."

Dr. Rossiter examined defendant in June 1985. Dr. Rossiter's affidavit noted defendant's history of substance abuse and head injuries. Dr. Rossiter indicated that defendant suffered from explosive and antisocial personality disorder, chronic paranoid disorder and depression. Dr. Rossiter's affidavit did not comment on defendant's diabetic condition.

Defendant has failed to show a likelihood that the trial judge would have suppressed the defendant's confessions if trial counsel had introduced this additional evidence. Although it appears that defendant

had been drinking on the night of the murder, approximately 8 1/2 hours had passed from the time defendant was taken into custody to the time he confessed to the murder of Simmons. As a result, defendant's evidence did not tend to show that his will was overborne at the time he confessed. (See *Hills*, 78 Ill. 2d at 506.) Evidence presented at trial demonstrated that defendant's confession was voluntary. At the hearing on defendant's motion to suppress, Lieutenant Elmer J. Weber testified for the State that he observed the defendant at the police station during the murder investigation. Weber testified that he did not remember that defendant had an odor of alcohol, and that he did not recall the defendant appearing intoxicated. Investigator Ronald Martin testified that during the first interview with defendant at approximately 6:30 a.m., defendant refused to answer the investigators' questions, stating, "I have nothing to say. I know she's dead." Martin testified that defendant did not appear to be under the influence of alcohol or drugs, and was not visibly suffering from any physical problem. The defendant answered questions regarding his name and age. Investigator David Strover's testimony corroborated the testimony of Lieutenant Weber. Strover further testified that other than being nervous and angry, defendant appeared "fairly normal."

First Assistant State's Attorney Thomas Sullivan testified that when defendant waived his *Miranda* rights and gave his oral and written confessions (during the second interview of defendant), Sullivan "saw no observable physical problems," and stated that the defendant did not complain of any physical difficulties. Sullivan stated that defendant spoke coherently, and answered questions in a logical fashion. Defendant asked for something to drink and some aspirin, which were provided for him. Sullivan testified that no promises

were made to defendant, no threats were made, and no physical or other coercive force was used against the defendant. Further, at the hearing on defendant's motion to quash his arrest and suppress evidence, the judge was made aware that the defendant was diabetic and had been drinking on the night of the murder.

In light of the foregoing, there is no reasonable probability that psychiatric testimony that defendant's drinking and diabetic condition altered the functioning of his brain would have resulted in the granting of the defendant's motion to suppress. See *People v. Murphy* (1978), 72 Ill. 2d 421; *In re Lamb* (1975), 61 Ill. 2d 383, *overruled in part on other grounds, People v. R.D.* (1993), 155 Ill. 2d 122, 134-39; *People v. Hester* (1968), 39 Ill. 2d 489; *People v. Richardson* (1965), 32 Ill. 2d 472; see also *People v. House* (1990), 141 Ill. 2d 323.

Further, there was overwhelming evidence that the defendant possessed the " 'requisite level of comprehension' " of his *Miranda* rights and made the uncoerced choice to waive them. (See *People v. Bernasco* (1990), 138 Ill. 2d 349, 354-55, quoting *Moran v. Burbine* (1986), 475 U.S. 412, 421, 89 L. Ed. 2d 410, 421, 106 S. Ct. 1135, 1141.) Defendant was orally admonished of his rights and asked if he understood them, to which he replied that he did. After his oral confession, Sullivan read the *Miranda* rights to defendant from a form. Defendant then read them aloud and stated that he understood them. Defendant initialed each admonition and signed the form. Defendant was coherent and logical in his responses to questions at the time he waived his rights. We note that defendant had considerable prior contacts with the criminal justice system. Where the record shows that a defendant's limited mental capacity did not interfere with his ability to understand his *Miranda* rights and voluntarily waive them, his statements will not be suppressed. *Mahaffey*, 165 Ill. 2d at 462.

We further reject defendant's argument that his confessions were involuntary because of police coercion. The record reveals that the defendant was taken into custody at 1:30 a.m. on January 10, 1985, that he was questioned at 6:30 a.m., that he was allowed to make a phone call at 7 a.m., and that he was again questioned at 10 a.m. At this last interview, defendant confessed to the murder of Simmons. Defendant has not alleged that the investigators physically abused him or threatened him in any way. We do not find that the defendant was a victim of coercion by police under these circumstances.

Since defendant's contention that he was prejudiced at the hearing on his motion to suppress is not meritorious, defendant's claim that his appellate representation on direct appeal was ineffective for failure to contest the trial court's ruling on his motion to suppress is also without merit. See *Winsett*, 153 Ill. 2d at 347.

*Ineffective Assistance of Counsel at Trial*

Defendant asserts that his trial counsel failed to provide effective assistance because he failed to: (1) present an opening statement; (2) develop a cohesive theory of defense; (3) present the defense of involuntary intoxication; (4) defend the aggravated criminal sexual assault aspect of the prosecution; and (5) address the felony murder issue during closing argument. Defendant further contends that his trial attorney erred when he conceded in closing argument that defendant "killed the woman he loved." We note that the facts which form the basis for these contentions were contained in the trial record and could have been raised on direct appeal. (See *People v. Thomas* (1995), 164 Ill. 2d 410, 416.) However, defendant alleges that his appellate counsel was ineffective for failing to raise these issues on direct appeal. Thus, we address the merits of defendant's allegations of error in the context of his claim of ineffective assistance of appellate counsel. (See *People v.*

*Coleman* (1995), 168 Ill. 2d 509, 523.) We again note that if defendant suffered no prejudice from the alleged errors at trial, then he suffered no prejudice from appellate counsel's failure to contest the errors on appeal. See *Winsett*, 153 Ill. 2d at 347.

Defendant argues that the cumulative effect of the alleged errors deprived him of his constitutional right to the effective assistance of counsel. (U.S. Const., amend. VI.) Defendant claims that his trial counsel's errors were such that this court should presume prejudice pursuant to the standard set forth by the Supreme Court in *United States v. Cronic* (1984), 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039, and adopted by this court in *People v. Hattery* (1985), 109 Ill. 2d 449.

Under exceptional circumstances, the two-part *Strickland* test need not be satisfied for a claim of ineffective assistance of counsel. (*Hattery*, 109 Ill. 2d at 461.) When counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." (*Cronic*, 466 U.S. at 659, 80 L. Ed. 2d at 668, 104 S. Ct. at 2047.) Circumstances which justify a presumption of prejudice include a complete denial of counsel at a critical stage of the trial, or representation by counsel who is acting under an actual conflict of interest. *People v. Johnson* (1989), 128 Ill. 2d 253, 266-67, citing *Cronic*, 466 U.S. at 658-59, 80 L. Ed. 2d at 667-68, 104 S. Ct. at 2046-47, and *Strickland v. Washington* (1984), 466 U.S. 668, 692, 80 L. Ed. 2d 674, 696, 104 S. Ct. 2052, 2067.

This court ruled in *Hattery* that the defendant was denied his sixth amendment right to effective assistance of counsel because the prosecution's case was not subjected to " 'meaningful adversarial testing.' " (*Hattery*, 109 Ill. 2d at 464.) In *Hattery*, defense counsel unequivocally conceded the defendant's guilt of the

crime charged. The jury was told by defense counsel that the *only* issue that they were to decide was the sentence to impose on the defendant. This conduct abdicated the guilt-innocence issues of the trial. (*Hattery*, 109 Ill. 2d at 464.) Noting the overwhelming evidence of the defendant's guilt, this court stated that " 'even when no theory of defense is available, if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond reasonable doubt.' " *Hattery*, 109 Ill. 2d at 465, citing *Cronic*, 466 U.S. at 656 n.19, 80 L. Ed. 2d at 666 n.19, 104 S. Ct. at 2045 n.19; see also *Johnson*, 128 Ill. 2d at 269; *People v. Fair* (1994), 159 Ill. 2d 51; *Guest*, 166 Ill. 2d at 394-95 (noting that *Hattery* must be construed narrowly).

The case at bar is distinguishable from *Hattery* in that defense counsel's statement during closing argument did not constitute an unequivocal concession of defendant's guilt on the charge of murder. Further, contrary to defendant's assertions, defense counsel undertook to develop a theory of defense at trial. The record indicates that defendant's attorney endeavored to show that defendant did not have the mental state necessary for a murder conviction. Because we find no merit to defendant's *Cronic* argument, we address his claim that the cumulative effect of his trial counsel's alleged errors violated *Strickland*.

Defendant first claims that his trial attorney's failure to present an opening statement fell below minimum professional standards. However, two of the three witnesses whom the defense planned to call were unavailable to testify at trial. The third defense witness refused to testify based on his fifth amendment right against self-incrimination. Further, since the defendant did not testify, the defense presented no evidence. Under the circumstances, defense counsel's decision to waive

opening statement was not unreasonable. Furthermore, the evidence of defendant's guilt was overwhelming and an opening statement given by the defense would not have likely changed the outcome of the trial.

Defendant claims that his trial counsel was ineffective in failing to present an intoxication defense. He argues that his attorney should have called lay and expert witnesses to testify about defendant's mental state on the night of the murder, and should have cross-examined the State's witnesses to adduce testimony concerning the defendant's alcohol abuse. Defendant asserts that such evidence would have provided a basis for the affirmative defense of voluntary intoxication or a jury instruction on involuntary manslaughter.

Initially, we note that defense counsel was unable to present lay testimony that the defendant was in an intoxicated condition at the time of the murder because, as previously discussed, two of the defendant's witnesses refused to appear to testify at trial and the third witness refused to testify on fifth amendment grounds. Defense counsel stated to the court that defendant "is now the only person who can testify about his drugged and intoxicated condition." However, defendant did not testify at trial.

Further, a jury is not required to accept the conclusions of a psychologist on the issue of intoxication. (See *People v. Leger* (1992), 149 Ill. 2d 355, 388, citing *People v. Olson* (1981), 96 Ill. App. 3d 193, 197.) In light of the facts of the case at bar, there is no reasonable likelihood that testimony that the defendant was intoxicated on the night of the murder would have successfully established the defense of voluntary intoxication or reduced defendant's culpability to provide a basis for a conviction of voluntary manslaughter. The statute which sets forth the requirements for the defense of intoxication provides:

"A person who is in an intoxicated or drugged condition is criminally responsible for conduct unless such condition ***

(a) Negatives the existence of a mental state which is an element of the offense." Ill. Rev. Stat. 1985, ch. 38, par. 6—3(a).

Defendant was charged with beating Simmons with the intent to kill or do great bodily harm. A jury can infer intent from "the character of the defendant's acts and the circumstances surrounding the commission of the offense. [Citation.] The defendant is presumed to intend the natural and probable consequences of his acts ***." (*People v. Terrell* (1989), 132 Ill. 2d 178, 204.) The defendant suggests that evidence of intoxication would have allowed the jury to infer that he was guilty of involuntary manslaughter. However, to convict a defendant of involuntary manslaughter, as opposed to returning a murder conviction, the jury must find that the defendant acted recklessly rather than intentionally or knowingly. (*People v. Wright* (1986), 111 Ill. 2d 18, 29.) The record here established that defendant beat Simmons for over an hour. The length and severity of the beating "negates any suggestion that [defendant's] conduct was only reckless." (*People v. Ward* (1984), 101 Ill. 2d 443, 451.) Defendant repeatedly asked Simmons whether she had been "messing around" with other men, and told Theresa Williams to clean the blood from Simmons. After the beating, defendant threw Lloyd his car keys and told Lloyd to go to a telephone to call the paramedics. Defendant further told Lloyd to tell the police that Simmons had come to the apartment in her beaten condition. Defendant removed his bloody sweat shirt and the bat from the apartment. Detective Tiegelmann testified that defendant specifically told the police that he was not intoxicated on the night of the murder. In view of the length and deliberate nature of the beating and the rational thoughts and statements of

the defendant in attempting to conceal his crime, there was no reasonable likelihood that defendant might have been convicted of involuntary manslaughter. See *Leger*, 149 Ill. 2d 355.

It is also noteworthy that evidence presented at trial refuted defendant's claim of intoxication. Defense counsel attempted to elicit testimony during cross-examination of both Williams and Lloyd to establish that the defendant was intoxicated at the time of the murder. However, in response to counsel's questions, Williams testified that the defendant "[l]ooked sober to me," and stated that although the defendant seemed "high" that night, "it's hard to tell with [defendant]." Williams further testified that between 7 p.m. and 10 p.m. on the night of the murder, she saw the defendant drink only one beer. Anthony Lloyd testified that the defendant looked like he had been drinking and was "staggering a little bit" and bumping into walls. Although there was testimony that the defendant had been drinking, there was overwhelming evidence that defendant intended to beat Simmons with the bat and was not merely reckless due to intoxication at the time of the murder.

Defendant next claims that his trial counsel was ineffective for failing to subject the State's case to meaningful adversarial testing with regard to defendant's commission of aggravated criminal sexual assault. Defendant asserts that trial counsel should have focused on inconsistencies in the testimony of Williams and Lloyd as to the size of the bat and whether it was broken at the end or in the middle. Defendant notes that counsel did not address the issue of aggravated criminal sexual assault during closing argument. Defendant also presents the affidavit of Dr. Hartmann Frederici in which Dr. Frederici opines that insertion of the end of a broken bat would likely have caused an injury

to the victim's anus. The failure to disprove the sexual assault, defendant asserts, resulted in his eligibility for the death penalty.

The record discloses that defense counsel aggressively cross-examined the State's expert, Dr. Blum, and elicited testimony that Dr. Blum would have expected the insertion of a splintered end of a bat to cause more injuries to the victim's rectum than the injuries he found during the autopsy. Moreover, defense counsel could not reasonably have been expected to overcome the overwhelming evidence that defendant sexually assaulted the victim. Theresa Williams' testimony provided compelling evidence that defendant had sexually assaulted Simmons. Much of Williams' testimony was corroborated by the testimony of Anthony Lloyd. The pathologist's report also confirmed the assault. Finally, the defendant told the authorities that he committed the sexual assault against Simmons. In light of such evidence, defendant's argument in this regard does not show that his trial counsel was ineffective under *Strickland*.

Defendant argues that his trial counsel failed to meaningfully cross-examine Dr. Blum. However, there is no reasonable likelihood that a more exhaustive cross-examination of Dr. Blum would have resulted in defendant's acquittal. Dr. Blum's testimony regarding the bruises which covered the body of Simmons corroborated the testimony of Theresa Williams and Anthony Lloyd and the confessions of the defendant. The evidence clearly established that the defendant severely beat Simmons with a baseball bat for more than an hour. Cross-examination as to the age of the bruises on Simmons' body would not have been likely to change the outcome of the trial even if it established that the bruises resulted from trauma that could not have been inflicted at the time the witnesses and the de-

fendant stated the beating occurred. The State's evidence overwhelmingly established the time during which the injuries were inflicted, notwithstanding the specificity of Dr. Blum's testimony.

Defendant next contends that his trial counsel ineffectively presented closing argument by failing to address the sexual assault issue and conceding that defendant killed Simmons. We initially note that during closing argument, defense counsel attacked the credibility of Theresa Williams, Anthony Lloyd and Officer Tiegelmann and pointed out inconsistencies in their testimony. Counsel noted the evidence of intoxication in arguing that defendant did not have the requisite intent or knowledge at the time of the murder. Defendant's attorney stressed the "interaction of drugs and alcohol and diabetes" and its relevance to "what was in [defendant's] mind." Defense counsel further argued that the circumstances of the beating and the actions of the defendant were "indicative of a person who did not have that intent, that knowledge."

There is no reasonable likelihood that the result of the trial would have been different had defense counsel attacked the sexual assault evidence during closing argument. As has already been noted, the evidence of sexual assault was overwhelming. Defendant's trial was not prejudiced by counsel's failure to attack the sexual assault aspect of the State's case during closing argument.

Defendant further asserts that his trial was prejudiced by statements of his trial counsel during closing argument. Defense counsel stated that defendant "killed the woman he loved" during closing argument. This statement was consistent with the defense theory of the case, which was that defendant did not have the required mental state to commit murder. Again, the evidence that defendant beat Simmons for over an hour

and that the beating caused Simmons' death was overwhelming. Defense counsel's statement was not an admission of guilt but only an admission of one element of murder which was uncontrovertible in light of the evidence. The jury concluded that defendant killed Simmons based on the evidence presented at trial rather than defense counsel's isolated statement during closing argument, which, when read in context, was made in order to persuade the jury that defendant did not intend to kill Simmons.

In the case at bar, defense counsel subjected the State's case to meaningful adversarial testing through cross-examination of the State's witnesses. The theory of the defense was that the defendant did not possess the requisite intent or knowing mental state for a murder conviction. Counsel attempted to develop this theory by establishing that the defendant was intoxicated and that his conduct after Simmons' death demonstrated that defendant lacked the intent to kill. Counsel also elicited testimony from Dr. Blum to show that defendant might not have forced a broken bat into the victim's rectum and that the fatal injuries could have resulted from a fall rather than being struck with the bat.

Defendant has not shown a reasonable likelihood that, if counsel had taken all the actions suggested by defendant in his post-conviction petition, the jury would have had a reasonable doubt as to the defendant's guilt. (See *Johnson*, 128 Ill. 2d at 271-72.) We find no cumulative error. Therefore, defendant has failed to satisfy the prejudice prong of the *Strickland* test. Defendant was not prejudiced by his appellate counsel's failure to raise the issue of ineffective assistance of trial counsel and defendant is not entitled to an evidentiary hearing on his claim of ineffective assistance of counsel.

*Ineffective Assistance of Counsel at Sentencing*

Defendant contends that the trial court erred in dismissing his claim that trial counsel rendered ineffective assistance at both the qualifying phase and the aggravation-mitigation phase of sentencing. We note that the failure to present mitigating evidence at a capital sentencing hearing does not necessarily constitute ineffective assistance of counsel. (*People v. Hampton* (1992), 149 Ill. 2d 71, 109-10.) Assuming counsel was ineffective under the first prong of the *Strickland* test, defendant has the burden of showing a reasonable probability that absent the claimed errors, the trial court would not have imposed the death penalty on defendant. (*Hampton*, 149 Ill. 2d at 109.) Defendant has failed to carry this burden.

Defendant notes that, at the first phase of sentencing, the court found that the defendant qualified for the death penalty based on the fact that "the murdered individual was killed in the course of another felony." (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(6).) The felony upon which eligibility was based was aggravated criminal sexual assault. The court took judicial notice of the evidence presented at trial and the parties presented no additional evidence.

Defendant relies on his arguments which allege that his trial counsel was ineffective in failing to adequately cross-examine the occurrence witnesses and the expert witness of the State, and in failing to present independent expert testimony to challenge the evidence of sexual assault presented by the State. Defendant contends that absent the claimed errors, the trier of fact would have entertained reasonable doubt as to the sexual assault and defendant would not have qualified for the death penalty. As previously discussed, the State presented overwhelming evidence at trial which established that the defendant committed the sexual assault. We conclude that there was no reasonable probability

that absent the alleged errors, the trial judge would have found that the defendant did not qualify for the death penalty based on aggravated criminal sexual assault.

Defendant also claims that his representation was unconstitutionally deficient at the aggravation-mitigation phase of the sentencing hearing because his counsel failed to investigate and present evidence that the defendant was under the influence of an extreme mental and emotional disturbance at the time of the murder. Under the Illinois murder statute, evidence that a defendant was acting under the influence of an extreme emotional disturbance at the time of the murder is one of the factors to be considered in mitigation, and may be a basis for imposing a sentence other than death. Ill. Rev. Stat. 1985, ch. 38, par. 9—1(c)(2); see *People v. Carlson* (1980), 79 Ill. 2d 564.

Defendant argues that Dr. Rossiter's report on his examination of defendant was available to defense counsel during sentencing and should have been used as evidence that defendant suffered from an "extreme emotional disturbance." Defendant argues that his history of head injuries and substance abuse, as well as Dr. Rossiter's diagnosis that defendant suffered from borderline paranoid schizophrenia, explosive personality disorder and an antisocial personality, would have established that he suffered from an extreme emotional disturbance at the time of the homicide.

In light of the facts of this case and the conclusions of Dr. Rossiter's report, defendant has failed to demonstrate a reasonable probability that had counsel presented evidence that defendant suffered from an extreme emotional disturbance at the time of the murder, the judge "would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." (*Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698,

104 S. Ct. at 2069.) An extreme emotional disturbance occurs when defendant's emotional state at the time of the murder is at "such a fragile point as to leave him with little to no emotional control." *People v. Phillips* (1989), 127 Ill. 2d 499, 534.

Dr. Rossiter diagnosed defendant as a borderline paranoid schizophrenic with an explosive and antisocial personality, having a history of substance abuse and head injuries. The record reveals that defense counsel considered presenting Dr. Rossiter as a witness at the sentencing hearing. "An informed decision not to present certain mitigating evidence may represent a valid strategic choice, particularly where the evidence is potentially damaging." (*Coleman,* 168 Ill. 2d at 535.) Counsel's decision not to call Dr. Rossiter, as a matter of trial strategy, does not constitute ineffective assistance of counsel under *Strickland.*

There is no reasonable probability that the introduction of Dr. Rossiter's testimony would have prompted the sentencing judge to find that there were mitigating circumstances sufficient to preclude imposition of the death penalty. In *People v. Henderson,* this court noted evidence of the defendant's troubled background may arouse sympathy in the sentencer, but that it might also cause the sentencer to believe that the defendant was "responsible for the criminal conduct engendered by his violent nature and that his violent nature made him a danger to society—' " 'mitigation ***, after all, [m]ay be in the eye of the beholder.' " ' " *People v. Henderson* (1990), 142 Ill. 2d 258, 339, quoting *Burger v. Kemp* (1987), 483 U.S. 776, 793-94, 97 L. Ed. 2d 638, 656-57, 107 S. Ct. 3114, 3125-26.

We find it unlikely that the additional evidence offered by the defendant would have caused the sentencing judge to conclude that defendant was under the influence of an extreme emotional disturbance at the

time of the murder. Defendant beat Simmons over most of her body for more than an hour. He repeatedly asked her to admit that she was "messing around" with another man. Defendant told Simmons to put her clothes on and "go make me some money." During the beating, defendant told Williams to clean the blood off of Simmons. Williams testified that when Simmons began breathing irregularly, the defendant got nervous. When Williams told defendant that Simmons was dead, he attempted to resuscitate Simmons. After the beating, defendant gave Lloyd his car keys and sent him to call the paramedics. Defendant told Lloyd and Williams to tell the police that Simmons had come to the apartment in a beaten state. Defendant also removed his bloody sweat shirt and the bat from the apartment.

Defendant exhibited rational and logical conduct on the night of the murder. Defendant spoke to the victim and the others in the apartment that night in a coherent and rational manner. He tried to resuscitate Simmons and removed evidence of the beating from the apartment. Defendant apparently expected the police to investigate and he concocted a story to tell them in order to protect himself. In light of all the evidence which the trial court considered at sentencing, including defendant's history of criminal activity, defendant failed to demonstrate a reasonable probability that the sentencing judge would not have imposed the death penalty if trial counsel had presented Dr. Rossiter's testimony in an effort to show that defendant was under an extreme emotional disturbance at the time of the murder.

Defendant cites to cases in which this court has vacated the death sentence. (*People v. Leger* (1992), 149 Ill. 2d 355; *People v. Buggs* (1986), 112 Ill. 2d 284; *People v. Carlson* (1980), 79 Ill. 2d 564.) However, these cases are distinguishable from the present case, since the

defendants in those cases suffered from severe emotional disturbances at the time of their crimes and, in addition, had no prior criminal record. The defendant in the instant cause has failed to demonstrate that he suffered from an extreme emotional disturbance at the time he murdered Simmons. In addition, the record reveals that defendant had engaged in prior criminal activity.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Kane County dismissing defendant's post-conviction claims is affirmed. The clerk of this court is directed to enter an order setting Thursday, March 14, 1996, as the date on which the sentence of death, entered in the circuit court of Kane County, is to be carried out. Defendant shall be executed in the manner provided by law. (Ill. Rev. Stat. 1991, ch. 38, par. 119— 5.) The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, to the warden of Stateville Correctional Center, and to the warden of the institution where defendant is now confined.

*Affirmed.*

JUSTICE NICKELS took no part in the consideration or decision of this case.