NOTICE: Under Supreme Court Rule 367 a party has 21 days after

the filing of the opinion to request a rehearing. Also, opinions

are subject to modification, correction or withdrawal at anytime

prior to issuance of the mandate by the Clerk of the Court.

Therefore, because the following slip opinion is being made

available prior to the Court's final action in this matter, it

cannot be considered the final decision of the Court. The

official copy of the following opinion will be published by the

Supreme Court's Reporter of Decisions in the Official Reports

advance sheets following final action by the Court.

                                    

               Docket No. 79423--Agenda 4--November 1996.

     THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JAMES TENNER,

                               Appellant.

                     Opinion filed January 30, 1997.

          JUSTICE MILLER delivered the opinion of the court:

          The defendant, James Tenner, brings this appeal from an

order of the circuit court of Cook County dismissing his post-

conviction petition without an evidentiary hearing. Because the

defendant received the death penalty for the underlying first-

degree murder convictions, the present appeal lies directly to this

court. 134 Ill. 2d R. 651(a).

          The circumstances of the defendant's offenses are fully

set forth in our opinion on direct appeal and require only brief

restatement here. The offenses in question occurred in South

Chicago Heights on September 2, 1987, when the defendant shot and

killed two persons and injured a third. The defendant had been

acquainted with two of the victims, Albert and Donna Sauls, for a

lengthy period; the third victim, Alvin Smith, was employed by

Albert Sauls. The offenses occurred in a garage where the defendant

rented space. Testimony was received at trial from both Albert

Sauls, who survived the attack, and Shirley Garza, who was the

defendant's former girlfriend and who was present during the

offenses. According to the trial testimony, the Saulses' and

Smith's hands and feet were first bound, and the three victims were

then ordered by the defendant to proceed to an area where three

nooses were hanging from the rafters. After placing the victims in

the nooses, the defendant proceeded to harangue them for several

hours, complaining that they had interfered in his relationship

with Garza, his former girlfriend. The defendant later shot the

Saulses and Smith with a shotgun, killing Donna Sauls and Smith.

The defendant then left the premises with Garza, and he was

apprehended later that night. In his own testimony at trial, the

defendant explained that he believed that the Saulses had

previously abducted Garza, and that they were plotting to kill him.

          The jury found the defendant guilty of two counts of

first degree murder, one count of attempted first degree murder,

four counts of aggravated unlawful restraint, and one count of

armed violence. After a capital sentencing hearing before the same

jury, the defendant was sentenced to death for his convictions for

first degree murder. On direct appeal, this court vacated the

defendant's conviction for attempted first degree murder but

otherwise affirmed the remaining convictions and corresponding

sentences. People v. Tenner, 157 Ill. 2d 341 (1993). The United

States Supreme Court denied the defendant's petition for a writ of

certiorari. Tenner v. Illinois, ___ U.S. ___, 129 L. Ed. 2d 882,

114 S. Ct. 2768 (1994). In December 1994 the defendant instituted

the present action in the circuit court of Cook County, seeking

post-conviction relief. The defendant submitted a supplemental

petition in March 1995. The circuit judge dismissed the defendant's

petitions without an evidentiary hearing. Because the death penalty

was imposed for the underlying first-degree murder convictions, the

defendant's appeal from the dismissal of his post-conviction

petition lies directly to this court. 134 Ill. 2d R. 651(a).

          The Post-Conviction Hearing Act (725 ILCS 5/122--1

through 122--7 (West 1994)) enables a defendant to challenge a

conviction or sentence for violations of federal or state

constitutional rights. People v. Thompkins, 161 Ill. 2d 148, 157

(1994). An action for post-conviction relief is a collateral

proceeding, not an appeal from the underlying judgment. People v.

Brisbon, 164 Ill. 2d 236, 242 (1995); People v. Free, 122 Ill. 2d

367, 377 (1988). To be entitled to post-conviction relief, a

defendant must establish a substantial deprivation of federal or

state constitutional rights in the proceedings that produced the

judgment being challenged. 725 ILCS 5/122--1 (West 1994); People v.

Guest, 166 Ill. 2d 381, 389 (1995). Considerations of res judicata

and waiver limit the range of issues available to a post-conviction

petitioner  to constitutional matters which have not been, and

could not have been, previously adjudicated." People v. Winsett,

153 Ill. 2d 335, 346 (1992). Thus, rulings on issues that were

previously raised at trial or on direct appeal are res judicata,

and issues that could have been raised in the earlier proceedings,

but were not, will be deemed waived. People v. Coleman, 168 Ill. 2d

509, 522 (1995); People v. Silagy, 116 Ill. 2d 357, 365 (1987).

                                     I

          The defendant raises a number of contentions here in

opposition to the trial court's decision to dismiss the amended

post-conviction petition without an evidentiary hearing. The

defendant's principal arguments on appeal concern the conduct of

trial and appellate counsel, and the defendant alleges that the

attorneys rendered constitutionally ineffective assistance in a

number of respects. Although the defendant focuses on the conduct

of trial counsel, he makes the allied claims that his attorney on

direct appeal was ineffective for failing to raise claims of trial

counsel's incompetence that were available at that time. Because

these issues overlap, we will address the challenges to appellate

counsel's competence at the same time as we consider the arguments

pertaining to trial counsel. See People v. Guest, 166 Ill. 2d 381,

390 (1995). We note that the same standards govern our assessment

of the performance of trial and appellate counsel here. People v.

Whitehead, 169 Ill. 2d 355, 381 (1996); People v. Johnson, 154 Ill.

2d 227, 233-34 (1993).

                                     A

          The defendant first argues that trial counsel was

ineffective for failing to have the defendant undergo an evaluation

of his mental condition prior to trial and sentencing. The

defendant contends that a mental evaluation could have provided the

basis for an insanity defense at trial and could have supplied

important mitigating evidence at the capital sentencing hearing. In

support of this contention, the defendant included with his

original and supplemental post-conviction petitions two reports by

Dr. Lyle Rossiter, a psychiatrist. Dr. Rossiter prepared a

preliminary report after reviewing the trial transcript and other

materials supplied by post-conviction counsel. After interviewing

the defendant on January 10, 1995, Dr. Rossiter submitted a

supplemental report, which incorporated the impressions he gleaned

on that occasion. In the supplemental report, Dr. Rossiter

expressed the view that the defendant  was in a highly irrational

state caused by a paranoid delusional disorder" at the time of the

offenses committed here. Dr. Rossiter believed that the defendant's

condition warranted a psychiatric examination to determine whether

he was insane or was suffering from extreme mental or emotional

distress.

          The constitutional guarantee of the assistance of counsel

(U.S. Const., amends. VI, XIV) includes the right to the effective

assistance of counsel (Cuyler v. Sullivan, 446 U.S. 335, 344, 64 L.

Ed. 2d 333, 343-44, 100 S. Ct. 1708, 1716 (1980)), both at trial

and on a defendant's first appeal as of right (Evitts v. Lucey, 469

U.S. 387, 396-97, 83 L. Ed. 2d 821, 830-31, 105 S. Ct. 830, 836-37

(1985)). The relevant standard for gauging the performance of

counsel is provided by Strickland v. Washington, 466 U.S. 668, 80

L. Ed. 2d 674, 104 S. Ct. 2052 (1984). To prevail on a claim of

ineffective assistance of counsel, a defendant must establish both

that counsel's performance was deficient and that he was prejudiced

as a result of counsel's alleged deficiency. Strickland, 466 U.S.

at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

                                    (1)

          The defendant initially argues that trial counsel was

ineffective for failing to have the defendant undergo a mental

evaluation prior to trial. The defendant believes that an

examination could have revealed evidence that would have supported

an insanity defense to the charges.

          This is not a case in which counsel wholly failed to

investigate the defendant's background prior to trial or

sentencing. Here, defense counsel retained a mitigation expert, who

conducted an investigation into the defendant's personal history,

though counsel later decided not to call that person as a witness

either at trial or at sentencing. Nothing in the record at that

time, however, suggested that the defendant suffered from any

mental impairment, or that there was any need to pursue a separate

inquiry into the defendant's mental condition.  Where the

circumstances known to counsel at the time of his investigation do

not reveal a sound basis for further inquiry in a particular area,

it is not ineffective for the attorney to forgo additional

investigation. [Citation.]" People v. Holman, 164 Ill. 2d 356, 371

(1995).

          We believe that trial counsel's failure to have the

defendant undergo a mental evaluation was a strategic choice made

after sufficient investigation. In Strickland the Supreme Court

observed:

                [S]trategic choices made after thorough

               investigation of law and facts relevant to

               plausible options are virtually unchallengeable;

               and strategic choices made after less than complete

               investigation are reasonable precisely to the

               extent that reasonable professional judgments

               support the limitations on investigation. In other

               words, counsel has a duty to make reasonable

               investigations or to make a reasonable decision

               that makes particular investigations unnecessary.

               In any ineffectiveness case, a particular decision

               not to investigate must be directly assessed for

               reasonableness in all the circumstances, applying a

               heavy measure of deference to counsel's judgments."

               Strickland, 466 U.S. at 690-91, 80 L. Ed. 2d at

               695, 104 S. Ct. at 2066.

          Nothing in the defendant's record or personal history

disclosed any history of mental illness or emotional disturbance;

there was nothing to prompt a separate inquiry into the defendant's

mental condition. In rejecting this portion of the defendant's

post-conviction petition, the judge below, who had also presided at

trial, explained:

                There was nothing to suggest a psychiatric exam in

               this young Defendant's background. If there had

               been anything that would have suggested [a]

               psychiatric exam, I probably would have ordered it

               sua sponte. I've been known to do that to satisfy

               myself as to the mental competency of a defendant

               in front of the bench. There's none of that in this

               record."

Like the judge below, we do not believe that counsel acted

unreasonably in failing to obtain a mental evaluation of the

defendant prior to trial.

          Even if we assume that counsel was deficient for not

obtaining an expert evaluation of the defendant's mental condition,

we do not believe that the defendant incurred any prejudice at

trial as a result of the claimed error. As we have noted, a

defendant complaining of ineffective assistance of counsel must

establish both a deficiency in counsel's performance and prejudice

resulting from the deficiency. To establish prejudice,  [t]he

defendant must show that there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is

a probability sufficient to undermine confidence in the outcome."

Strickland, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at

2068.

          The defendant does not claim that he was insane at the

time of the offenses involved in this case, and the defendant has

failed to show that a mental evaluation would have revealed

evidence that could have resulted in his acquittal on grounds of

insanity. Notably, Dr. Rossiter did not find that the defendant was

insane when he committed the present offenses. Although Dr.

Rossiter believed that the defendant was delusional at the relevant

time, Dr. Rossiter did not conclude that the defendant was insane.

The evidence presented by the defendant in support of the present

claim falls far short of what is needed to establish an insanity

defense.

                                    (2)

          The defendant makes the related argument that counsel

rendered ineffective assistance at his capital sentencing hearing

when his attorneys failed to obtain a mental evaluation of the

defendant and offer the evidence in mitigation. The defendant

correctly notes that extreme mental or emotional disturbance is

included as a mitigating circumstance in the Illinois death penalty

statute. Ill. Rev. Stat. 1987, ch. 38, par. 9--1(c)(2).

          We do not believe that counsel's failure to make this

inquiry in preparation for the sentencing hearing constituted

ineffective assistance. As we have already noted, there was nothing

in the defendant's record or personal history at that time to

prompt counsel to seek an examination of the type the defendant now

proposes. Moreover, we note the potentially ambiguous nature of

evidence of mental problems: as we have observed in other cases,

information about a defendant's mental or psychological impairments

is not inherently mitigating. People v. Sanchez, 169 Ill. 2d 472,

491-92 (1996). At sentencing, a judge or jury considering evidence

of this nature might view the information as either mitigating or

aggravating, depending, of course, on whether the individual

hearing the evidence finds that it evokes compassion or

demonstrates possible future dangerousness. People v. Foster, 168

Ill. 2d 465, 491 (1995); People v. Mahaffey, 165 Ill. 2d 445, 467-

68 (1995); People v. Jones, 144 Ill. 2d 242, 272-73 (1991).

          Further supporting our conclusion that counsel was not

deficient is the conflict that this evidence could have created

with the defendant's trial testimony, in which the defendant

attempted to establish that he was guilty only of second degree

murder, a noncapital offense. See People v. Holman, 164 Ill. 2d

356, 373 (1995); People v. Kokoraleis, 159 Ill. 2d 325, 330-31

(1994). Testimony given by a defendant at trial can profoundly

influence the range of strategic options available to counsel at a

subsequent sentencing hearing. In the present case, the defendant

testified at trial that he prepared the ropes used to bind the

victims and that he fired the shots that killed two of the victims

and injured a third. The defendant sought to explain these actions

by attributing his conduct to passion and emotion.

          Consistent with the defendant's trial testimony,

counsel's strategy at the sentencing hearing was to demonstrate

that the present crimes were anomalous events in the defendant's

life. In closing argument at the second stage of the sentencing

hearing, counsel argued that the defendant would not pose a threat

to others if he received a sentence of life imprisonment, which in

this case was the only alternative to the death sentence. Defense

counsel continued with this theme by characterizing the offenses as

products of passion and emotion, unlikely to be repeated in the

future. Counsel noted further that the defendant had previously led

a peaceful, law-abiding life. In addition, counsel emphasized the

defendant's ambition, his exemplary work history, and his devotion

to family members and friends.

          In sum, defense counsel, after sufficient investigation,

employed a coherent strategy at the sentencing hearing, and we do

not believe that counsel was ineffective in failing to take the

course now suggested by the defendant. Unlike post-conviction cases

raising similar allegations of incompetence in which this court has

found an evidentiary hearing or a new sentencing hearing to be

warranted (see People v. Orange, 168 Ill. 2d 138 (1995); People v.

Thompkins, 161 Ill. 2d 148 (1994); People v. Perez, 148 Ill. 2d 168

(1992)), there did not exist in this case a substantial amount of

mitigation that counsel ignored or inexplicably failed to

introduce. Even if we assume that the performance of the

defendant's trial attorneys was deficient in this regard, however,

we do not believe that the defendant suffered any prejudice as a

consequence. Assessing potential prejudice of an asserted

deficiency in counsel's performance at a capital sentencing hearing

requires that we examine the effect of counsel's conduct on the

sentencer's decision. People v. Sanchez, 169 Ill. 2d 472, 491

(1996); People v. Ashford, 168 Ill. 2d 494, 505 (1995); People v.

Coleman, 168 Ill. 2d 509, 536 (1995). The relevant question here is

 whether there is a reasonable probability that, absent the errors,

the sentencer--including an appellate court, to the extent it

independently reweighs the evidence--would have concluded that the

balance of aggravating and mitigating circumstances did not warrant

death." Strickland, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S.

Ct. at 2069.

          With these considerations in mind, we do not believe that

the present defendant was prejudiced by his trial attorneys'

failure to obtain and introduce evidence of this nature. Although

the jury heard substantial evidence in mitigation--including the

testimony of 12 defense witnesses who testified to the defendant's

good characteristics, his helpfulness to others, and his loyalty to

his family and friends--together with evidence of the role that

passion and emotion played in the commission of these offenses, the

jury still decided that death was the appropriate punishment in

this case. The jury's decision to impose the death penalty in the

face of this evidence suggests that the additional evidence

proposed by the defendant would not likely have altered the jury's

determination. See People v. Holman, 164 Ill. 2d 356, 373-74

(1995). The jury's decision stemmed in large part from the facts

and circumstances of the present crimes, not from the absence of

evidence that the defendant was mentally or emotionally disturbed.

As we have already noted, evidence of extreme mental and emotional

disturbance has a dual nature and can be viewed as either

aggravating or mitigating by the sentencer, and we do not believe

that further inquiry into the defendant's mental condition would

have resulted in imposition of a different sentence.

                                     B

          The defendant next argues that trial counsel was

ineffective for pursuing what the defendant believes was a

fundamentally flawed and untenable defense at trial, and for

permitting the defendant to testify in support of that theory.

Specifically, the defendant contends that counsel should not have

attempted to establish that the defendant was guilty of second

degree murder, for the defendant believes that the evidence in this

case was clearly inadequate to support either form of that offense.

The defendant notes that the trial judge refused to instruct the

jury on either form, a decision that this court upheld on appeal.

Tenner, 157 Ill. 2d at 370-74.

          Res judicata and waiver would normally preclude our

consideration of this challenge to trial counsel's performance, for

these same questions could have been raised on appeal from the

defendant's conviction and sentence. A related issue was, in fact,

raised on direct appeal, when the defendant argued that trial

counsel was ineffective for acknowledging in opening statement at

the guilt-innocence phase of the proceedings that the defendant

prepared the rope restraints and fired shots at the victims;

appellate counsel then contended that the combination of counsel's

concession with the instructions given to the jury, including

instructions for felony murder, made a conviction for first degree

murder automatic. This court rejected the defendant's challenge to

counsel's performance, concluding that the trial attorneys were not

ineffective in this respect. Tenner, 157 Ill. 2d at 374-78. Because

the defendant also contends here that appellate counsel was

ineffective in failing to challenge trial counsel's selection of

this trial strategy, we believe that it is appropriate to consider

the question on its merits.

          Discussing trial counsel's acknowledgment that the

defendant performed the acts constituting the basis for the charged

offenses, we stated on direct appeal:

                In the present case, counsel was attempting to

               show that the defendant was acting under a

               mitigating mental state that would have reduced the

               severity of the homicides from first degree murder

               to second degree murder. `It is not at all unusual

               for a defendant facing a murder charge to argue

               that he is guilty instead of a less serious

               offense, such as voluntary manslaughter.

               [Citations.]' (People v. Page (1993), 155 Ill. 2d

               232, 262.) Because the defendant's own testimony

               corresponded to the statements made by defense

               counsel, we must assume that the defendant

               consented to this strategy." Tenner, 157 Ill. 2d at

               376.

          These same considerations are pertinent here in assessing

counsel's choice of a defense strategy. The State had overwhelming

proof of the defendant's commission of the acts involved here,

including the testimony of two persons present throughout the

offenses. Given the strength of that evidence, counsel could have

reasonably concluded that the best option was to attempt to portray

the defendant's conduct as the result of sudden and intense passion

resulting from provocation or an unreasonable belief in the need

for self-defense, which, under either theory, would establish

second degree murder. Ill. Rev. Stat. 1987, ch. 38, pars. 9--

2(a)(1), (a)(2). That the trial judge ultimately refused to

instruct the jury on either form of second degree murder does not

demonstrate that counsel acted unreasonably in pursuing this line

of defense. Nor can it be said that the presentation of this theory

was useless. By portraying the defendant's actions as the result of

provocation or an unreasonable belief in self-defense, counsel

could attempt to evoke sympathy for the defendant in the minds of

the jurors, which might possibly have led to imposition of a

sentence other than death. For these reasons, we do not believe

that trial counsel was deficient in this choice of strategy, or

that the defendant was prejudiced by it.

                                     C

          The defendant also contends that trial counsel was

ineffective for not objecting to some 10 instances of allegedly

improper comments by the prosecution in closing argument at the

conclusion of the second stage of the capital sentencing hearing.

Again, principles of res judicata and waiver would normally

preclude our consideration of these objections. Because the

defendant also argues that appellate counsel was ineffective for

failing to challenge trial counsel's performance in this regard,

however, we will address this issue on its merits.

          It is well established that appellate counsel is not

required to raise every conceivable issue on appeal. Jones v.

Barnes, 463 U.S. 745, 751-53, 77 L. Ed. 2d 987, 993-94, 103 S. Ct.

3308, 3312-13 (1983); People v. Collins, 153 Ill. 2d 130, 140

(1992); People v. Ruiz, 132 Ill. 2d 1, 18 (1989); People v. Frank,

48 Ill. 2d 500, 505 (1971).  Experienced advocates since time

beyond memory have emphasized the importance of winnowing out

weaker arguments on appeal and focusing on one central issue if

possible, or at most on a few key issues." Jones, 463 U.S. at 751-

52, 77 L. Ed. 2d at 994, 103 S. Ct. at 3313. Although in capital

cases the number of issues raised on appeal customarily exceeds  a

few," counsel cannot possibly--and competently--argue every issue

imaginable. Page limits and time constraints will both influence

appellate counsel's choice of issues, requiring the attorney to

exercise judgment in selecting from the potential claims of error

that may be asserted on appeal.

          We are satisfied in the present case that appellate

counsel did not unreasonably fail to raise on appeal the instances

of allegedly improper argument cited by the defendant in his post-

conviction petition. Our conclusion is confirmed by an examination

of the remarks in question. We have examined the comments cited by

the defendant and, without reproducing the full text of each of

those comments here, we do not believe that appellate counsel was

ineffective for failing to challenge these comments on appeal, or

that trial counsel was ineffective for failing to register

contemporaneous objections to these remarks. In the series of

comments challenged here, the defendant maintains that the

prosecutor improperly referred to the victims' families, stated

that the defendant had  dragged in" mitigating witnesses, advised

the jurors that, under their oaths, they were to judge the

defendant by his vicious acts, referred to hearsay evidence that

the defendant had  tortured" a girlfriend several times over a

period of several years, and stated that the defendant had  slashed

and slaughtered" a girlfriend on another occasion. In addition, the

defendant contends that the prosecutor improperly speculated that

the defendant planned the offenses in advance, suggested that the

defendant sought out female victims, expressed a personal belief

that the defendant should receive the death sentence, told the jury

to act on behalf of the victims in this case, and suggested that

the defense was concealing a witness. The defendant argues that the

preceding remarks were not supported by the evidence, prevented the

jury from considering the mitigating evidence offered by the

defense, and were otherwise improper and prejudicial.

          On direct appeal, appellate counsel challenged four

portions of the prosecution's argument, including two of the

comments raised by the defendant here. This court rejected these

objections, finding that the remarks either were either proper or

did not warrant reversal. Tenner, 157 Ill. 2d at 382-86. We do not

believe that appellate counsel was ineffective for failing to raise

the additional remarks cited by the defendant in this post-

conviction proceeding. Trial counsel failed to object to 9 of the

10 comments raised here, and on direct appeal our review therefore

would have been limited in those instances in which no timely

objection was made, allowing a consideration only of whether the

asserted impropriety rose to the level of plain error (134 Ill. 2d

R. 615(a)), or whether trial counsel was ineffective for failing to

make an objection. We believe that the comments cited here were

fair inferences from the evidence or were not so egregious as to

constitute plain error, or that trial counsel's failure to object

to the remarks did not constitute ineffective assistance. We note,

too, that the sentencing jury heard the evidence in the case, that

the comments complained of were scattered through a lengthy

argument, and that the jury was properly instructed on the purpose

of closing argument.

                                     D

          In his final challenge to the performance of trial

counsel, the defendant argues that counsel was ineffective for

failing to comply with the discovery rules applicable to criminal

cases. The defendant maintains that evidence supporting his theory

of self-defense was excluded by the trial judge because defense

counsel had violated Supreme Court Rule 413(d) (134 Ill. 2d R.

413(a)) by not disclosing to the prosecution that that defense

would be raised at trial. Because of counsel's failure to meet the

requirements of the rule, the trial judge sustained the State's

objection to counsel's assertion in opening statement that the

defendant acted in fear of the victims. The defendant believes that

trial counsel's error effectively denied him the right to present

a part of his defense to the jury.

          Principles of res judicata and waiver would normally

preclude our consideration of this issue. The same evidence now

offered by the defendant in support of this contention was

available on direct appeal, and a related issue was even raised at

that time. Without challenging the competency of the defendant's

trial attorneys, appellate counsel argued then that the trial judge

improperly limited the presentation of the theory of defense in

ruling that counsel could not mention, in opening statement, the

defendant's alleged fear of the victims. We did not rule on that

contention on direct appeal, however, concluding that the trial

judge's correct refusal of instructions on second degree murder

made the question moot. Tenner, 157 Ill. 2d at 374. Because we did

not previously rule on this matter, and because the defendant now

frames the issue as one involving the ineffective assistance of

both trial counsel and appellate counsel, we will consider the

question here.

          Assuming that trial counsel was deficient in failing to

comply with the requirements of Rule 413, we do not believe that

the defendant was prejudiced by trial counsel's failure to provide

timely notice of the anticipated defense. Notwithstanding the trial

judge's initial ruling, the defendant was not actually precluded

from presenting the self-defense theory at trial. As the State

observes, the defendant stated repeatedly in his testimony at trial

that he was  scared,"  afraid," or  in fear" of the victims and

acted in response to their perceived threats. Defense counsel

succeeded in making the same point in closing argument at trial.

The State did not object to those portions of the defendant's

testimony or counsel's argument. Although trial counsel was

prevented from raising the theory in opening statement, he was

still able to introduce it through the defendant's testimony and in

subsequent argument to the jury. The trial judge later refused to

instruct the jury on second degree murder and the defendant's claim

that he acted from an unreasonable belief in the need for self-

defense, but the reason for the judge's ruling was the inadequacy

of the evidence offered in support of the theory, not counsel's

failure to comply with the discovery mandate. The defendant was not

prejudiced by counsel's failure to comply with the discovery rule.

                                    II

          The defendant next argues that his right to present a

defense was denied by a policy of the Cook County jail that

prevented a probationary correctional officer from testifying in

the defendant's behalf as a mitigation witness at the second stage

of the capital sentencing hearing. The defendant also contends that

the State's Attorney's office knew or should have known of the

alleged policy, and that the prosecution failed to disclose it.

Finally, the defendant argues that trial counsel was ineffective

for failing to bring forth evidence of the alleged policy at the

sentencing hearing to explain the absence of the additional

witness.

          Our consideration of this issue is doubly handicapped,

for the defendant has presented insufficient evidence of the

existence of the policy alleged and has provided no written offer

of proof of what the witness in question would have testified to.

Included in the defendant's post-conviction petition is a

memorandum by a defense investigator, in which the investigator

reported that he learned of the supposed policy from two sources:

from the superintendent of the jail, and from the guard whom the

defense sought to call as a witness. The investigator related that

he was told by those two sources that probationary correctional

officers could be subpoenaed but that they were not to testify in

behalf of an inmate. The defendant does not explain how such a

witness could avoid testifying if he appeared in course in response

to a subpoena. We note also that another probationary correctional

officer did testify in the defendant's behalf at the sentencing

hearing. As the State observes, the policy cited by the defendant

apparently did not prevent that guard from appearing as a

mitigation witness.

          Even if the policy in question existed, we are unable to

conclude that the defendant was prejudiced by it, or by counsel's

failure to raise the matter at sentencing. The defendant has failed

to set forth the substance of the potential witness' anticipated

testimony. In the absence of a showing of what that testimony would

have been, it is impossible for this court to attempt to determine

the witness' potential impact on the sentencing jury. A post-

conviction petitioner is not entitled to an evidentiary hearing as

of right. People v. Thomas, 164 Ill. 2d 410, 416 (1995). An

evidentiary hearing is necessary only when the petitioner makes a

substantial showing of a constitutional deprivation, supported by

the record or affidavits. People v. Gaines, 105 Ill. 2d 79, 91-92

(1984); People v. Curtis, 48 Ill. 2d 25, 27-28 (1971). Assuming,

however, that the second guard would have corroborated the

testimony of the correctional officer who did appear, and who

described the defendant as a model prisoner, we do not believe that

the defendant was prejudiced by the absence of the second guard's

testimony. The sentencing jury heard mitigating testimony from a

substantial number of witnesses, who described various facets of

the defendant's life, including his conduct while incarcerated.

Given the circumstances of the present offenses and the mitigating

evidence introduced by defense counsel, we do not believe that the

jury would have reached a different sentencing decision if it had

heard favorable yet cumulative testimony from a second guard

describing the defendant's behavior in jail.

                                    III

          In his final post-conviction claim, the defendant argues

that appellate counsel acted under a conflict of interest and

rendered ineffective assistance. We have already disposed of the

defendant's allegations of ineffective assistance of appellate

counsel in our preceding discussion, however, and these issues

require no further treatment here. One additional allegation made

by the defendant warrants brief comment, however. The defendant

makes the generalized complaint that appellate counsel was laboring

under a conflict of interest in representing the defendant on

appeal. The defendant offers no evidence in support of this

contention, but he apparently believes that the conflict arose

because appellate counsel and trial counsel were employed by the

same entity, the public defender's office of Cook County. Beyond

the identity of the attorneys' employer, however, the defendant

offers nothing to support the charge of a conflict, and we fail to

see in what way the defendant was prejudiced in this case by the

appellate representation. See People v. Banks, 121 Ill. 2d 36

(1987). It should be noted that counsel on direct appeal challenged

the performance of counsel at trial. Moreover, the defendant

specifically asked the trial judge to appoint the public defender's

office to handle the appeal. In the absence of evidence of an

actual conflict, we do not believe that the defendant may now

complain of that choice.

                                  *  *  *

          For the reasons stated, the judgment of the circuit court

of Cook County is affirmed. The clerk of this court is directed to

enter an order setting Tuesday, May 20, 1997, as the date on which

the sentence of death entered in the circuit court of Cook County

is to be carried out. The defendant shall be executed in the manner

provided by law (725 ILCS 5/119--5 (West 1994)). The clerk of this

court shall send a certified copy of the mandate in this case to

the Director of Corrections, to the warden of Stateville

Correctional Center, and to the warden of the institution where the

defendant is now confined.

Judgment affirmed.