(No. 82112.—■■■■■■)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. EARL HAWKINS *et al.*, Appellees.

*Opinion filed January 29, 1998.*

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (Arleen C. Anderson, Assistant Attorney General, of Chicago, and Renee Goldfarb and Peter Fischer, Assistant State's Attorneys, of counsel), for the People.

David J. Stetler and Michael S. Schachter, of McDermott, Will & Emery, of Chicago, for appellee Earl Hawkins.

John L. Stainthorp, of People's Law Office, of Chicago (Michael Babiarz, of counsel), for appellee Nathson Fields.

JUSTICE McMORROW delivered the opinion of the court:

The State of Illinois initiated this direct appeal from an order entered in the circuit court of Cook County, which vacated defendants' convictions for murder, vacated their death sentences and ordered a new trial. 134 Ill. 2d R. 651. Pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West 1992)), Judge Deborah Mary Dooling ruled that defendants failed to receive a fair trial because the judge in the underlying criminal trial accepted a bribe to acquit defendants of murder charges alleged against them.

This court previously affirmed defendants' convictions and death sentences on direct appeal. *People v. Fields*, 135 Ill. 2d 18 (1990). Since the facts underlying

defendants' convictions are discussed in detail in *Fields*, we set forth here only those facts relevant to the issue before us, namely, whether the circuit court's decision to grant defendants post-conviction relief was manifestly erroneous. We affirm.

## BACKGROUND

On April 28, 1984, Jerome "Fuddy" Smith and Talman Hickman, reputedly members of the Black Gangsters Goon Squad Gang, were shot to death outside a public housing complex. The State charged defendant Earl Hawkins, George Carter and defendant Nathson Fields, members of the rival El Rukn gang, with those murders. The circuit court of Cook County, former Judge Thomas Maloney (hereinafter Maloney) presiding, found defendants guilty of first degree murder for the deaths of Smith and Hickman following a bench trial.[1] Both Hawkins and Fields waived their right to a jury determination of their eligibility for the death penalty, but asserted their right to a jury for the aggravation and mitigation phase. A jury found no mitigating circumstances to preclude imposition of the death penalty, and on September 19, 1986, Maloney entered a judgment of conviction against defendants, and sentenced Hawkins and Fields to death. Neither defendants' post-trial motion nor their initial post-conviction petitions contained any allegations of illegality by Maloney or any officer of the court. On February 16, 1990, this court affirmed defendants' convictions on direct appeal. *People v. Fields*, 135 Ill. 2d 18 (1990).

On June 26, 1991, a federal grand jury returned a four-count indictment against Maloney and attorneys William Swano and Robert McGee. Swano represented Hawkins during the murder trial before Maloney. Mc-

---

[1]Carter's case was severed from the Hawkins/Fields trial. *Fields*, 135 Ill. 2d at 27.

Gee was a former associate of Maloney in private practice and acted as Maloney's intermediary with those who wished to bribe the judge.

-The United States alleged that over the course of several years, Judge Maloney accepted bribes to influence the outcome of cases pending before him. The government charged Maloney with racketeering conspiracy, racketeering, extortion under color of official right and obstruction of justice, in violation of 18 U.S.C. §§ 1962(c), (d), 1951, 1503 (1994). The indictment alleged, among other criminal acts, that Swano, with McGee acting as a go-between, forwarded a $10,000 bribe to Maloney to acquit defendants in the Hawkins/Fields trial. The indictment also asserted that Maloney accepted bribes on at least four other occasions to fix the outcome of criminal trials, and that on three of those occasions, Swano acted as briber.

Prior to the commencement of the trial of Maloney and McGee (*United States v. Maloney*, 71 F.3d 645 (7th Cir. 1995)), Swano and Hawkins agreed to testify on behalf of the United States. Testimony from other witnesses, telephone records, videotaped conversations, recorded telephone conversations, and evidence gathered through FBI surveillance corroborated the trial testimony of Hawkins and Swano. McGee testified at trial, but denied the allegations of criminal conduct. Maloney did not testify.

Evidence adduced at the Maloney trial demonstrated that between the summer of 1985 and early 1986, Swano met several times with his client, Hawkins. Swano informed Hawkins that Swano had bribed Maloney in previous instances, and that Hawkins' case could be "fixed," meaning an acquittal could be obtained, in return for a bribe to Maloney. Hawkins agreed to the scheme and identified Alan Knox as the member of the El Rukn leadership Swano could contact to obtain

money for a bribe. Swano met Knox and received a "go ahead" to proceed with the bribe, and an assurance that the El Rukns would furnish the cash.

In January or February 1986, Swano contacted McGee and told McGee he wanted to talk about a "hot case" in front of Maloney. In a subsequent meeting, McGee informed Swano that Maloney authorized a discussion between McGee and Swano about the case. Swano gave McGee items from the case file and told McGee he could get $10,000 from the El Rukns to pay the judge.

Within one or two weeks, McGee contacted Swano and told Swano they could "do the fix" for $10,000, but that the defense had to present a "good case." McGee said the judge was worried about "looking bad" on a double-murder case.

On the first day of trial, Knox appeared at court with $10,000. Swano transferred the money to a folder and, after the day's proceedings, gave the money to McGee at a restaurant. Two days later, on June 19, 1986, McGee telephoned Swano and told Swano in coded language that he wanted to give the money back to Swano. When Swano asked why, McGee stated that the "State witnesses were too good and the case was going to[o] good for the State." Swano replied "that's ridiculous," told McGee that the State's witnesses were "terrible," and complained that the defense had not had an opportunity to put on its case. He told McGee to keep the money. Swano then told Hawkins that the fix might not go through, that there may have been a leak regarding the fix from the El Rukns to the FBI, and that the judge was scared.

According to Swano, he spoke to Maloney the following day and said, "We got an agreement on this, I'm going to live up to my bargain, you've got to live up to yours." The judge replied, "Put on your case and we'll see." Swano spoke directly to Maloney again, on the

first day the defendants presented evidence in their cases. Outside of the judge's chambers, Maloney asked Swano if Swano's witnesses were ready. Swano affirmed and said, "[T]hey are good, as we agreed they would be." Maloney replied, "Let's put them on."

Closing arguments concluded on June 25, 1986. Maloney advised the parties he would review the evidence and render a decision the following day. On the evening of June 25, McGee informed Swano that Maloney would not fix the case. When Swano arrived at Maloney's courtroom the next morning, the judge informed him that a lawyer had left a file folder for Swano, and that Swano should ask a sheriff to get it for him. The sheriff could not locate the folder, and when the sheriff asked the judge where he could find it, the judge retrieved the folder from his own desk and handed it to Swano. It was the same folder Swano had given McGee, and it contained $10,000. The judge entered his finding of guilty against both Hawkins and Fields later that same day.

On April 16, 1993, a federal jury found Maloney guilty on all counts of the indictment. The United States Court of Appeals for the Seventh Circuit affirmed the conviction by decision rendered November 29, 1995.

Fields and Hawkins filed amended post-conviction petitions (725 ILCS 5/122—1 *et seq.* (West 1992)) on September 8, 1992, and April 17, 1996, respectively. Both requested vacatur of the circuit court's verdict and convictions, and a hearing to offer proof of the allegations in their petitions. Defendants insisted that Maloney's acceptance of a bribe, its subsequent return and the judge's suspicion of a FBI investigation into his conduct "created a conflict of interest for Judge Maloney." They maintained that Maloney's self-interest prompted him to convict defendants to prove to federal authorities that no wrongdoing occurred on Maloney's part. Maloney's lack of impartiality in the outcome of

their trial, defendants urged, deprived them of due process as guaranteed under the United States and Illinois Constitutions. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §§ 2, 11.

Following argument, Judge Deborah Mary Dooling of the circuit court of Cook County entered an order on September 18, 1996, granting defendants' amended petitions, vacating their convictions and ordering a new trial. Judge Dooling noted initially that the Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West 1992)) does not require the circuit court to conduct an evidentiary proceeding regarding defendants' complaints, and that the statute vests the court with broad discretion to identify the evidence the court will consider in ruling on a petition. Judge Dooling found that the record before the court, consisting of pleadings, the trial transcript from United States v. Maloney, affidavits from Fields and his attorney, and the transcripts of "the state cases of Earl Hawkins and Nathson Fields" obviated a need for an evidentiary hearing in the instant matter. Judge Dooling ruled as well that defendants were denied a "fair trial before an impartial trier of fact" because Maloney had a "direct, personal, substantial, pecuniary interest" in the outcome of the Hawkins/Fields trial.

Judge Dooling rejected each of the arguments raised by the State in opposition to defendants' cause. Judge Dooling found that Fields and Hawkins had not waived their right to pursue post-conviction relief; that relief would not be barred by Hawkins' and Fields' own participation in the bribery scheme; and that Fields and Hawkins need not show actual bias by Maloney in order to prevail.

The State initiated this direct appeal pursuant to Illinois Supreme Court Rule 651 (134 Ill. 2d R. 651).

## ANALYSIS

### I. Standard of Review

A proceeding brought pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West 1992)) is not a direct appeal but a collateral attack on a judgment of conviction. *People v. Franklin*, 167 Ill. 2d 1, 9 (1995). The Act permits the petitioner to identify constitutional violations occurring at trial that could not be and were not previously adjudicated. *People v. Foster*, 168 Ill. 2d 465, 473-74 (1995). To win immediate relief or the right to an evidentiary hearing of his constitutional claims, the petitioner bears the burden of showing a substantial deprivation of his constitutional rights. *Foster*, 168 Ill. 2d at 473-74. The trial court may in its discretion forgo an evidentiary hearing and grant the petition solely on the strength of the petition and responsive pleadings. See 725 ILCS 5/122—6 (West 1992); see also *People v. Reed*, 84 Ill. App. 3d 1030, 1040 (1980). We will disturb the circuit court's ruling in a post-conviction proceeding only if it is manifestly erroneous (*Foster*, 168 Ill. 2d at 474), *i.e.*, if it contains error that is "clearly evident, plain, and indisputable." *People v. Ruiz*, 177 Ill. 2d 368, 384-85 (1997).

### II. Due Process

A fair trial in a fair tribunal is a basic requirement of due process. *Bracy v. Gramley*, 520 U.S. 899, 905, 138 L. Ed. 2d 97, 104, 117 S. Ct. 1793, 1797 (1997); *In re Murchison*, 349 U.S. 133, 136, 99 L. Ed. 942, 946, 75 S. Ct. 623, 625 (1955). Fairness at trial requires not only the absence of actual bias but also the absence of the probability of bias. *In re Murchison*, 349 U.S. at 136, 99 L. Ed. at 946, 75 S. Ct. at 625. To this end, no person is permitted to judge cases in which he or she has an interest in the outcome. *Bracy*, 520 U.S. at 905, 138 L. Ed. 2d at 104, 117 S. Ct. at 1797; *In re Murchison*, 349 U.S.

at 136, 99 L. Ed. at 946, 75 S. Ct. at 625. "Every procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the state and the accused denies the latter due process of law." *Tumey v. Ohio*, 273 U.S. 510, 532, 71 L. Ed. 749, 758, 47 S. Ct. 437, 444 (1927); see also *Aetna Life Insurance Co. v. Lavoie*, 475 U.S. 813, 822, 89 L. Ed. 2d 823, 833, 106 S. Ct. 1580, 1585 (1986); *Ward v. Village of Monroeville*, 409 U.S. 57, 60, 34 L. Ed. 2d 267, 270-71, 93 S. Ct. 80, 83 (1972).

Because our inquiry is limited to whether Maloney could have been tempted not to hold the balance between the parties " ' "nice, clear and true" ' " (*Aetna Life Insurance Co.*, 475 U.S. at 822, 89 L. Ed. 2d at 833, 106 S. Ct. at 1585; *Ward*, 409 U.S. at 60, 34 L. Ed. 2d at 271, 93 S. Ct. at 83; *Tumey*, 272 U.S. at 532, 71 L. Ed. at 758, 47 S. Ct. at 444), defendants need not show actual bias by the trier of fact in order to be granted a new trial. As the United States Supreme Court stated in *In re Murchison*, 349 U.S. at 136, 99 L. Ed. at 946, 75 S. Ct. at 625, due process will sometimes "bar trial by judges who have no actual bias and would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.' "

In this appeal, we find that Maloney possessed and actively cultivated a personal, pecuniary interest in the outcome of defendants' case. Evidence admitted at the trial of Maloney and McGee demonstrated, beyond a reasonable doubt, that Maloney traded verdicts for bribes. Swano and Hawkins testified that they conspired with McGee and Maloney to purchase an outcome amenable to Hawkins in his own murder trial. Knowing from past experience that Maloney could be bribed,

Swano approached McGee to convey the availability of a $10,000 bribe to Maloney. Again using McGee as an intermediary, Maloney communicated that he would accept a bribe, with certain conditions. By this action, he signalled his readiness to skew the outcome of the trial in order to earn $10,000 for himself.

That Maloney subsequently returned the money did not render his interest in the outcome any less acute. As defendants suggest, he wanted to insure that he did not lose his judicial post and salary as a result of a criminal indictment, and therefore was motivated to return a verdict that would not spark the suspicions of authorities.

Record evidence supports the conclusion that Maloney knew the FBI was watching him. The Hawkins/Fields trial occurred in June 1986. By that date, several judges presiding at 26th Street and California, where Maloney sat, had been convicted or indicted in Operation Greylord for soliciting bribes. FBI agents testified at trial that they monitored Maloney's courtroom during the trial of the Hawkins/Fields matter. Hawkins testified that on June 19, the first date that the judge expressed interest in returning the money, Swano told Hawkins that Maloney wanted to disavow their agreement, and told Hawkins that perhaps information had been leaked from the El Rukns to the FBI. After the trial ended, moreover, Maloney warned Lucius Robinson, Maloney's intermediary of choice before McGee, to "watch Swano, he might be wearing a wire."

The State concedes that defendants did not receive a fair trial before Maloney. However, the State articulates four arguments, grounded in equity, for the proposition that the circuit court's order must be reversed, regardless of any affront to defendants' due process rights. None of the State's contentions persuade us that defendants are any less deserving of fundamental constitutional guarantees than any other litigant.

### III. Waiver

Initially, the State maintains that defendants waived their right to attack their convictions on due process grounds. Relying on *People v. Titone*, 151 Ill. 2d 19 (1992), the State contends that defendants knew that they were denied an impartial trier of fact at the moment of their conviction and knew that "the bribe did not work." The State reasons that defendants thus should have raised any constitutional infirmity arising from the bribe "then and there."

Waiver is a rule of administrative convenience, not a jurisdictional or absolute bar to procedurally defaulted claims. *People v. Whitehead*, 169 Ill. 2d 355, 371 (1996). In addition, strict application of the waiver rule may be relaxed in certain instances, including when the factual insufficiency of the record on appeal prevented an appellant from raising an issue before the reviewing court. *Whitehead*, 169 Ill. 2d at 371-72. This exception is triggered when the evidentiary basis for a claim lies outside the record, and not by the mere failure of a party to present or raise a claim. *Whitehead*, 169 Ill. 2d at 372.

As made plain at Maloney's federal trial, the transactions surrounding the bribe occurred in clandestine locales like the lockup of Cook County jail, the antechamber to the judge's office, restaurants and El Rukn headquarters. Clearly the transactions did not and would not occur within earshot of a court reporter, nor would they be memorialized in any document filed with the court. The facts forming the basis for defendants' due process claims were plainly *dehors* the common law record on direct appeal, and could not come before any tribunal unless and until they were aired in federal court by indictment and by trial. Accordingly, we agree with the circuit court's assessment that defendants did not waive their due process claims.

### IV. *Laches*

Before this court, the State also contends for the

first time that defendants' claims are barred by *laches*. We find that the State waived this argument, and that, regardless of waiver, the argument is meritless.

The State never asserted before the circuit court that the *laches* doctrine barred defendants' claim. Issues not raised in the circuit court are generally considered waived on appeal. *People v. O'Neal*, 104 Ill. 2d 399, 407 (1984); see also *People v. Harris*, 129 Ill. 2d 123, 171 (1989). The principle of waiver applies as equally to the State as it does to a defendant in a criminal matter. *O'Neal*, 104 Ill. 2d at 407.

The State argues that the equitable doctrine of *laches* should be applied to the case at bar, and urges this court to find, as a matter of fairness, that the constitutional assault on defendants' convictions must proceed no further. *Laches* bars recovery by a litigant whose unreasonable delay in bringing an action for relief prejudices the rights of the opposing party. *Tully v. State*, 143 Ill. 2d 425, 432 (1991); *People ex rel. Daley v. Strayhorn*, 121 Ill. 2d 470, 482 (1988). Courts are reluctant to aid a party who has knowingly failed to exercise his rights to the detriment of an opposing party. *Tully*, 143 Ill. 2d at 432. Application of the *laches* doctrine requires a showing of (1) a lack of diligence by the party asserting the claim; and (2) prejudice to the opposing party as a result of the delay. *Tully*, 143 Ill. 2d at 432.

The State complains that Hawkins first claimed the lack of a fair trial because of the bribe in 1996: 10 years after his conviction and 10 years after the failure of the bribe which Hawkins initiated. Fields fares little better in the State's assessment: he neglected to raise the argument until 1992. The State sees defendants' delay as an inexcusable lack of diligence.

Moreover, the State argues that the unique facts of this case render defendants' delay particularly prejudi-

cial to the State. The State's witnesses that testified at the first trial are likely dead or imprisoned, the State insists, and those that are readily available to testify may recant their original trial testimony, since recantation is a frequent occurrence where the criminal participants have gang affiliations.

With regard to Fields, the lapse of time between the bribe and the filing of his amended post-conviction petition is understandable when this court considers that Fields professed to know nothing of the bribe until 1991; he filed his amended petition in 1992; and he moved for judgment on the petition less than four months after Maloney's appeals were finally exhausted. While Hawkins may not have filed his amended petition with the same alacrity, he testified that he brought the fact of the bribe to the attention of the Cook County State's Attorney's and United States Attorney's offices in 1987. By his amended petition, moreover, he alleged within one month after Maloney exhausted his appeals that Maloney's corruption deprived him of a fair trial. Furthermore, both Fields and Hawkins contend that they and the State agreed not to request a ruling on the amended post-conviction petitions until Maloney was tried. While the record yields no evidence of such an agreement, we note that the State delayed moving to dismiss Fields' petition until December 5, 1994, more than two years after it was filed. The State is therefore at least partially responsible for defendants' delay. We find that such circumstances militate against employment of the *laches* doctrine.

## V. Clean-Hands Doctrine

The State argues strenuously for application of the "clean-hands" doctrine to this case. The State believes

that this equity-based concept should preclude Hawkins[2] from benefitting from his own illegal conduct. Because Hawkins caused the unfair trial by attempting to bribe Maloney, the State reasons, he should not gain by his own malfeasance through the reward of a new trial.

The cases cited by the State do not persuade, however. None employ the clean-hands doctrine in the criminal setting, and none decide whether a constitutional violation of the magnitude found here can be nevertheless overlooked because of the complaining party's own impurity.

Instead, we are persuaded by the rationale employed in two factually similar cases cited by defendants. In *United States v. Forrest*, 620 F.2d 446 (5th Cir. 1980), a jury found defendant William Forrest guilty of buying, receiving and possessing stolen goods. On appeal, the defendant requested a new trial, asserting that an incident of alleged jury tampering deprived him of a trial by a fair and impartial jury. The Court of Appeals specifically considered and rejected a clean-hands analysis:

"It makes no difference in this case that it was Forrest himself who initiated the contact that may have poisoned the jury. We reject the suggestion that Forrest may not be heard here to complain of the results of his own misconduct. He has been convicted of jury tampering and for that misconduct is subject to punishment. That is an entirely discrete matter. At issue *** in this case was whether Forrest had dealt with stolen goods, not whether

---

[2]The State limits its clean-hands and injection-of-error arguments to Hawkins. According to the State, the record contains insufficient evidence of Fields' involvement in the bribery scheme to enforce these doctrines against him. The State also contends that, should we decide that Hawkins' petition is precluded by operation of either doctrine, then the case must be remanded for an evidentiary hearing on the question of Fields' knowledge of and participation in the bribe. Because we rule that neither doctrine applies here, a remand is unnecessary.

he had tried to corrupt the judicial system. A fair and impartial jury cannot be permitted to draw the conclusion that, because a defendant attempted to fix his trial, he is guilty of the offense for which he is being tried. It is conceivable that a defendant, innocent of the charge being tried, might attempt to tamper with a jury to assure a favorable verdict." *Forrest*, 620 F.2d at 458.

In *Zilich v. Reid*, 36 F.3d 317, 321 (3d Cir. 1994), the defendant sought a petition for writ of *habeas corpus*, because the guilty plea entered by the defendant upon charges of indecent assault and corruption of a minor was, according to the defendant, obtained involuntarily. The court of appeals reversed the denial of the petition and remanded for an evidentiary hearing.

The *Zilich* court observed that a guilty plea induced by promises that divest the plea of its voluntary character is void.

"This fundamental rule is not altered where, as here, a defendant alleges that he was expecting a certain sentence based upon his own illegal conduct. Where surrender of a fundamental constitutional right is concerned, our inquiry can not be focused upon the 'clean hands' of the defendant. Instead, we must focus upon the 'voluntariness' of the surrender." *Zilich*, 36 F.3d at 321.

The case *sub judice* also confronts us with the alleged loss of a fundamental constitutional right. That defendants may have contributed to the corruption of an impartial fact finder is immaterial to our immediate inquiry of whether they were denied a fair trial. As in *Forrest*, a distinct punishment exists for those attempting bribery of a judge. See 730 ILCS 5/5—8—1, 5—8—2 (West 1992). The penalty prescribed by statute for bribery is the proper means of addressing that conduct. Allowing the State to execute defendants as "punishment" for their "unclean hands" is not an acceptable alternative.

## VI. Injected Error

The State raises the injected-error doctrine, which

posits that "it is manifestly unfair for a party to expect a second trial on the basis of an error which that party injected into the proceedings." Citing *People v. Gacy*, 103 Ill. 2d 1 (1984); *People v. Scott*, 148 Ill. 2d 479 (1992); *People v. Taylor*, 101 Ill. 2d 508 (1984); *Ervin v. Sears, Roebuck & Co.*, 65 Ill. 2d 140 (1976). We find the reasoning animating the injected-error doctrine similar to the logic underpinning the clean-hands doctrine. In both instances, the law is understandably reluctant to aid litigants responsible for the very errors of which they complain. Nevertheless, this court conceded in *Ervin* that "there might be unusual circumstances under which the interests of justice require a relaxation of this rule." *Ervin*, 65 Ill. 2d at 145. We believe this is one such instance.

As stated in *Forrest*, 620 F.2d 446, Hawkins' attempt to influence the outcome of this case bears its own separate penalties. If Hawkins deserves punishment for bribing Maloney, the penalty should be the one prescribed by statute, and not the loss of his life. We note too that, unlike each decision cited by the State, Hawkins is not solely responsible for the error that stripped the trial of due process protections. See, *e.g.*, *People v. Gacy*, 103 Ill. 2d 1, 74 (1984) (court ruled defendant could not inject error into case by insisting for first time on appeal that evidence to which he stipulated at trial regarding his sanity was improperly admitted as an aggravating factor for sentencing purposes); *People v. Scott*, 148 Ill. 2d 479, 508 (1992) (court ruled that defendant introducing evidence of his psychiatric condition to cross-examine expert could not later argue the evidence was improperly admitted); *People v. Taylor*, 101 Ill. 2d 508, 522-23 (1984) (where the alleged instances of ineffective assistance of counsel were due to defendant's "uncooperative and disruptive conduct," this court refused to reverse on the basis of that issue); *Ervin v. Sears, Roebuck & Co.*, 65 Ill.

2d 140, 144-45 (1976) (court found that parties could not procure new trial on basis of allegedly erroneous instructions they caused to be given to jury). We understand that no bribe would have occurred had the El Rukns not produced the money at Swano's and Hawkins' urging. It is equally true, however, that no bribe would have occurred had Judge Maloney not been willing to accept the bribe. The severe penalty recommended by the State for Hawkins' misconduct seems even more disproportionate when we consider that the trial judge encouraged defendants to "inject error" into the trial by signalling that he could be bribed.

## VII. Public Policy

The State argues that Fields and Hawkins were convicted of a double murder and that this court previously affirmed those convictions. Nevertheless, the sole fact of the convictions cannot restore integrity to a trial that was fatally flawed. The present appeal may be analogized to *Vasquez v. Hillery*, 474 U.S. 254, 88 L. Ed. 2d 598, 106 S. Ct. 617 (1986). There, an all-white grand jury returned a murder indictment against the African-American defendant. The defendant was subsequently convicted of murder. Defendant sued in the federal courts for a writ of *habeas corpus*, contending that a conviction following indictment by a grand jury from which the members of any race are systematically excluded violated his equal protection rights. The *Vasquez* Court affirmed the vacatur of the defendant's conviction, relying in part on *Tumey*, and ruled that when a question arises as to the objectivity of those "charged with bringing a defendant to judgment," the structural integrity of the whole process is suspect, and it cannot be restored by a presumption of regularity or an evaluation of the resulting harm. Thus,

> "[A] conviction cannot be understood to cure the taint attributable to a charging body selected on the basis of

race. Once having found discrimination in the selection of a grand jury, we simply cannot know that the need to indict would have been assessed in the same way by a grand jury properly constituted. The overriding imperative to eliminate this systemic flaw in the charging process, as well as the difficulty of assessing its effect on any given defendant, requires our continued adherence to a rule of mandatory reversal." *Vasquez*, 474 U.S. at 264, 88 L. Ed. 2d at 609, 106 S. Ct. at 624.

Similarly, defendants' convictions in the case *sub judice* do not, in and of themselves, remove the taint introduced into the trial by the bribe. Having determined that due process was lacking in the criminal proceedings, it is impossible for this court to know whether the verdict would have been the same if rendered by an uncorrupted judge. The "overriding imperative" of the need for due process when life, liberty or property are at stake, as well as the difficulty in detecting bias except in its most overt forms (see *Bracy v. Gramley*, 81 F.3d 684, 702 (7th Cir. 1996) (Rovner, J., dissenting)), makes vacatur of the judgment on defendants' convictions, and the initiation of a new trial on all issues, necessary here.

Furthermore, the court acknowledged in *Fields*, 135 Ill. 2d 18, that the evidence against Fields and Hawkins was not without inconsistencies, and that it was because of the great deference accorded the trier of fact in cases like this that the convictions were allowed to stand.

"The trial court chose, it would appear, to believe the testimony of the State's witnesses and not that of the defense witnesses. While discrepancies in the evidence certainly existed, we cannot say that the trial court's conclusion was so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt as to the defendants' guilt. [Citations.] Accordingly, we hold that the evidence, believed by the trial court, was sufficient to prove the defendants guilty of the murders of Jerome Smith and Talman Hickman beyond a reasonable doubt." *Fields*, 135 Ill. 2d at 49.

On retrial, defendants may be found guilty again. If so, we do not believe it will be either a preordained result or the fruit of a useless exercise. Rather, the courts and the parties will know that the verdict will be the product of a fair trial.

The State maintains too that, as a practical matter, retrying these defendants will be difficult. According to the State, the usual concerns prompted by the passage of time are compounded in "gang" cases by the frequent "flipping" of State witnesses, *i.e.*, the unsettling proclivity of these witnesses to recant prior testimony.

While we are not unsympathetic to the difficulties presented by retrials, particularly years after the crime charged, we believe that any hardships anticipated on remand are outweighed by the gravity of the constitutional violation in this case that can be cured only by a new trial. Additionally, as noted in *Fields*, 135 Ill. 2d 18, at least one of the State's key witnesses flipped during the course of the Hawkins/Fields trial, so that the impeachment threat posed by recantations has already occurred. We observe as well that the problems posed by recantations are not limited to the State's case; the conundrum of inconsistent testimony was visited upon the defendants' case too, when three defense witnesses gave trial testimony inconsistent with statements previously given to police. *Fields*, 135 Ill. 2d 18.

The State predicts other negative consequences should we affirm Judge Dooling's order. For example, the State fears that attempts to bribe judges will become an accepted trial tactic. The State envisions the following "win/win" scenario for criminal defendants: if a judge accepts a bribe and acquits them, they win their freedom, as well as a good chance that no one will discover their crooked enterprise; if the judge returns the bribe, however, defendants can insist on a new trial and, in the words of the State, they will "have benefitted from the delay."

We note that anyone attempting to bribe a judge faces a potential felony prosecution (730 ILCS 5/5—8—1, 5—8—2 (West 1996)), and that an attorney faces the additional penalty of loss of licensure. 134 Ill. 2d Rs. 771, 3.3, 8.4. We believe that the prospect of additional criminal charges will deter litigants from employing bribery as a "normal course of trial strategy." See also *Forrest*, 620 F.2d at 458 (court rejected similar argument where defendant was accused of jury tampering in an attempt to influence the outcome of his case and, on appeal, argued that he had been denied a fair trial).

The Constitution demands that we enforce its terms uniformly. The result we reach today is mandated solely by the infirmity of a trial that resulted in the imposition of the death sentence on two men, and not by any consideration for the character of the individuals involved.

We are reminded of the observation of Judge Rovner in her dissent in *Bracy v. Gramley*, 81 F.3d 684, 703 (7th Cir. 1996):

> "The Constitution was not written for easy cases and likeable defendants, and we are sworn to uphold it no matter what the result. Knowing full well the perils that may confront us if we insist that defendants be given trials before honest judges, [we] believe we have no choice but to take the first step down that path here. We cannot turn our backs on the Constitution, especially when the defendants' very lives are at stake."

## VIII. Evidentiary Hearing

An issue remains as to whether both Hawkins and Fields should get a new trial, or whether the matter should be remanded for an evidentiary hearing concerning Fields' involvement in the bribe. Fields argued before Judge Dooling that neither he nor his trial attorney, Jack Smeeton, had any knowledge of the bribe until well after his trial ended. Both Smeeton and Fields filed affidavits attesting to their innocence in this regard.

Also before Judge Dooling, however, were the transcripts of the Maloney trial, containing contradictory evidence on this subject. Swano did not recall Fields' presence during meetings where the bribery scheme was hatched and refined. Nevertheless, Hawkins testified that Fields was with Hawkins on at least one occasion when Hawkins discussed the bribe with Swano. Moreover, uncontradicted evidence demonstrates that the $10,000 used to bribe Maloney came not from either petitioner or even their families, but rather from the El Rukn gang, as approved by the highest authorities in the gang. Both Hawkins and Fields were El Rukn members.

Judge Dooling indicated her belief that both defendants were involved in the bribery scheme. In her order she stated:

> "Thus, the claims of defendants Hawkins and Fields are not barred by their participation in the bribe of Judge Maloney. Hawkins concedes his involvement in said illegal conduct while Fields denies knowledge of the fix. Regardless of what the defendants claim, the State could have charged both of them with bribery."

We do not find Judge Dooling's conclusions manifestly erroneous and therefore believe that no further evidentiary hearing on the matter is necessary.

Judge Dooling's factual finding distinguishes the instant matter from cases like *Cartalino v. Washington*, No. 96—4002 (7th Cir. July 31, 1997), in which defendant Cartalino and another man named Bridges were simultaneously tried for murder before Judge Michael Close. Bridges elected to be tried before Judge Close alone; Cartalino exercised his right to a jury. In a *habeas* proceeding before the United States District Court for the Northern District of Illinois, Cartalino maintained he had been denied a fair trial before an impartial trier of fact. The district court found that Judge Close accepted a bribe from Bridges to acquit Bridges. However, no finding was made regarding Cartalino's involve-

ment, if any, in the bribery scheme. While some evidence suggested that Bridges persuaded Judge Close to see to it that Cartalino "took the fall" for the crime, the district court neglected to address the question of whether the trial judge's bias extended to Cartalino.

The Seventh Circuit vacated the dismissal of Cartalino's application for a writ of *habeas corpus*, and remanded the matter to the district court for an evidentiary hearing. The fact that a judge has been bribed in some cases does not automatically establish that he was not impartial in others, the Seventh Circuit concluded. *Cartalino*, No. 96—4002. Before the court decided if Cartalino's constitutional rights had been violated, the district court needed to determine whether the bribery scheme included Cartalino's conviction. *Cartalino*, No. 96—4002.

Assuming *arguendo* that Fields was entirely unaware of the plot to bribe Maloney, we think the unrefuted evidence of the El Rukns' participation in the bribe compels the same result. In other words, even if Fields knew nothing of the bribe, the fact that the gang to which he belonged paid the judge inexorably suggests that the bribe was intended to benefit both Hawkins and Fields, and that Maloney was to acquit both men. Therefore, regardless of whether Fields himself bribed Maloney, the taint of partiality spread to his case, as well as Hawkins'.

## CONCLUSION

For the reasons stated above, we affirm the order of the circuit court of Cook County vacating defendants' convictions and sentences, and ordering a new trial.

*Affirmed.*