2024 IL App (2d) 240032-U
No. 2-24-0032
Order filed December 4, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CF-928 |
| GILBERTO MONTES, | ) ) ) | Honorable Keith A. Johnson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE KENNEDY delivered the judgment of the court.
Justices Jorgensen and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We agree with appellate counsel that this appeal presents no issue of arguable merit; therefore, we grant counsel's motion to withdraw and affirm the judgment.

¶ 2    Defendant, Gilberto Montes, appeals from the denial, following an evidentiary hearing, of his amended petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) for relief from his conviction of unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2)(D) (West 2014)). The Office of the State Appellate Defender was assigned to represent defendant in this appeal but now moves to withdraw, claiming

that there are no arguably meritorious issues for appeal. For the reasons below, we grant the motion and affirm the denial of defendant's amended postconviction petition.

¶ 3                                    I. BACKGROUND

¶ 4     Defendant was indicted on a single count each of unlawful possession of a controlled substance (720 ILCS 570/402(a)(2)(D) (West 2014)) and unlawful possession of a controlled substance with intent to deliver. Before trial, defendant moved to quash his arrest and suppress evidence. In the motion, he alleged that, while lawfully operating his vehicle at Indian Trail Road and Farnsworth Street in Aurora, he was stopped by members of the Aurora Police Department and the Department of Homeland Security (DHS). He was "asked for an [*sic*] identification and was told there was a warrant for his arrested [*sic*] for selling marijuana." The officers searched his vehicle without a warrant or his consent. They recovered no contraband. They then placed defendant into a police vehicle, drove to his residence, and searched it without a warrant or his consent. "Two [k]ilograms and other evidence" were discovered during the allegedly unlawful arrest and search.

¶ 5     The trial court held an evidentiary hearing on the motion to quash and suppress. In his opening statement, defense counsel asserted:

> "[Defendant] was stopped by [DHS] prior to him committing any crime or doing anything unlawful. He was placed into custody, and it's my understanding that at that point then they learned that he was an illegal alien, and he was placed into custody for that. That's really not one of the issues in the case at this point, but I guess it is a sub-issue."

Counsel proceeded to assert that the searches of defendant's vehicle and home were unlawful because they were conducted without a warrant or his consent. Counsel did not further address defendant's immigration status.

¶ 6    In its opening statement, the State remarked that, before approaching defendant, the officers had information that he was "possibly engaged in narcotics trafficking" and was "in the country illegally." The State asserted that defendant consented to the search of his house.

¶ 7    Defendant testified that, on June 12, 2015, he drove his truck to a Walgreens store. When he returned to the truck, an individual who said he was with DHS told defendant to stop. Several other law enforcement officers arrived at the scene. Defendant was told that he was under arrest for selling marijuana. After the officers searched defendant's truck, they drove him to his house and searched it without showing him a warrant or obtaining his consent. On cross-examination, the State asked defendant whether he had proper documentation to live in the United States. Defense counsel objected, and the trial court sustained the objection, reasoning that the question "would require [defendant] to *** make an incriminating statement."

¶ 8    Montague Hall, a detective with the Waukegan Police Department, testified that he was a member of a DHS task force investigating narcotic offenses throughout the Chicago area, including Aurora. In January 2015, Hall's task force was investigating defendant and had information that he "was [selling] narcotics and laundering money back to the Mexican cartel." Asked if the task force had any "information about the defendant's status as it relates to being in the United States[,]" Hall responded, "Through identifying him, we learned that he was illegal in the United States." Hall added that the task force obtained the information about defendant's immigration status from an immigration office.

¶ 9    Hall testified that, on June 12, 2015, he and fellow officer James Lindley approached defendant in a Walgreens parking lot. Hall spoke with defendant in Spanish. Neither Hall nor Lindley told defendant to " 'stop.' " Hall advised defendant that "he was under investigation for being illegal in the country at the time." In the meantime, Eric Powell, an "immigration officer,"

arrived at the scene. Powell confirmed that defendant was in the United States illegally. Defendant was then taken into custody and informed of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Hall advised defendant that he was suspected of, among other things, selling cannabis from his house. Defendant denied that there was any cannabis in his house, and he told the officers that they "were free to check his house if [they] wanted to." The officers placed defendant into the back of a squad car, drove him to his house, and searched it. The officers recovered money, ledgers, and two kilograms of cocaine. Defendant's truck was also searched, and cannabis was recovered. Hall did not ask defendant for written consent for the searches.

¶ 10    During closing argument, defense counsel contended that the State failed to establish that defendant consented to the search of his house. According to counsel, defendant's mere statement that officers could "check his house" (which he made in response to being told that he was suspected of selling cannabis from the house) was too vague to establish that defendant "understood his rights, understood he had a right to refuse, and that he did this freely and voluntarily." Counsel did not address whether the officers had probable cause to arrest defendant based on his immigration status.

¶ 11    In denying the motion to quash and suppress, the trial court found that (1) before approaching defendant, the officers had determined that he was in the United States illegally; (2) the officers legally stopped defendant and took him into custody; and (3) defendant validly consented to a search of his home.

¶ 12    After a bench trial, defendant was convicted of possession of a controlled substance with intent to deliver. In his posttrial motion, defendant argued, *inter alia*, that both his arrest and the subsequent search of his home were unlawful and, thus, the trial court erred by denying his motion to quash and suppress. However, at the hearing on the posttrial motion, defense counsel stated,

"We had earl[ier] alleged that it was an illegal arrest, but I think the fact that the defendant didn't have any immigration status in the United States probably vitiates that argument[.]" Counsel then argued that the officers did not obtain defendant's valid consent to search his home. The trial court denied the posttrial motion.

¶ 13 Defendant appealed, arguing that his arrest was unlawful because the officers had neither a warrant nor probable cause to believe that he had committed a crime. *People v. Montes*, 2020 IL App (2d) 180565, ¶ 33 (*Montes I*). On the issue of probable cause, defendant noted that the ostensible justification for his arrest was that he was in the United States unlawfully. *Id.* Citing *Arizona v. United States*, 567 U.S. 387, 407 (2012), defendant argued that illegal presence in the United States is not a crime and, thus, his immigration status did not furnish probable cause for his arrest. *Montes I*, 2020 IL App (2d) 180565, ¶¶ 33-34. In *Arizona*, the United States Supreme Court said: "As a general rule, it is not a crime for a removable alien to remain present in the United States. [Citation.] If the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent." *Arizona*, 567 U.S. at 407.

¶ 14 We rejected defendant's argument, concluding that "[his] actions in the trial court preclude[d] him from arguing on appeal that the officers lacked probable cause to arrest him for an immigration violation." *Montes I*, 2020 IL App (2d) 180565, ¶ 41. Specifically, we noted that, because defendant's written motion to quash and suppress did not specify that his immigration status was not a valid basis for an arrest, the State was not put on notice of defendant's position as to the facts and the law. *Id.* ¶ 42. We also noted that, in his opening statement at the suppression hearing, defense counsel indicated that defendant's immigration status was "not one of the issues in the case at th[at] point," but then counsel added the vague qualification that "it [was] a sub-issue." *Id.* ¶ 43. We further noted that, even after hearing testimony that the officers arrested

defendant after determining that he was in the United States illegally, defense counsel did not address the legality of defendant's arrest, but instead confined his argument to whether defendant consented to the warrantless search of his home. *Id.* We observed that, "[h]ad defendant properly set forth the issue in the trial court, the State could have explored it further through more specific questioning of witnesses both at the hearing on the motion to suppress and at trial." *Id.* ¶ 44. Finally, we noted defense counsel's concession in the posttrial proceedings that defendant's immigration status likely vitiated defendant's challenge to his arrest. *Id.* ¶ 45. We agreed with the State that this concession "amount[ed] to invited error." *Id.* "In other words, because counsel conceded that the officers had probable cause to arrest defendant for being in the country illegally, defendant [could not] complain on appeal that the trial court erred in denying the motion to suppress on this basis." *Id.*

¶ 15    Defendant alternatively argued on direct appeal that, by failing to properly preserve the probable cause issue for appellate review, trial counsel provided ineffective assistance of counsel. *Id.* ¶ 51. "[T]he question," we noted, "[was] whether the motion to suppress would have been granted had defense counsel adequately raised and preserved the issue of whether the officers had probable cause to arrest defendant for being in the United States illegally." *Id.* ¶ 61. We observed that, while defendant cited *Arizona* in arguing that the officers lacked the authority to arrest him for an immigration infraction, on *Arizona* did not necessarily control because its comment that immigration status alone cannot furnish probable cause for arrest was directed "only [to] civil immigration violations, as opposed to criminal immigration violations." *Id.* ¶¶ 58-59 (citing *Arizona*, 567 U. S. at 414 (stating that there was "no need in this case to address whether reasonable suspicion of illegal entry or another immigration crime would be a legitimate basis for prolonging a detention")). We noted case law from other courts indicating that "even local law enforcement

agencies may enforce criminal immigration-related laws." *Id.* ¶ 59. We agreed with defendant that the record did not show that the officers relied on a *criminal* immigration violation in arresting him. *Id.* However, we noted that the record *also* did not show that the officers relied on a *civil* immigration violation. *Id.* ¶¶ 59, 61. Rather, the record was silent as to the character of the violation, and we attributed this silence to defendant's failure to raise, in the trial court, the issue of probable cause to arrest. *Id.* We concluded that defendant's ineffectiveness claim was "better suited to collateral proceedings where the record may be adequately developed." (Internal quotation marks omitted.) *Id.* ¶ 61.

¶ 16    Defendant later filed a *pro se* postconviction petition under the Act. The trial court appointed counsel to represent defendant in the proceedings. Postconviction counsel filed an amended petition, claiming that (1) trial counsel was ineffective for failing to raise the issue of whether defendant's immigration status supplied probable cause to arrest him and (2) appellate counsel was ineffective for relying *Arizona*, which defendant claimed was "distinguishable" because it "involved state and local officers trying to enforce civil immigration violations," whereas here "the two officers who stopped and arrested [defendant] testified that they were working as task-force officers with [DHS]." The amended petition alleged no facts outside the record to support its claims.

¶ 17    The State unsuccessfully moved to dismiss the amended petition. Thereafter, the trial court held an evidentiary hearing, at which defendant presented the testimony of an investigator who detailed her unsuccessful efforts to locate Hall and Powell.

¶ 18    Defendant also introduced seven exhibits. Exhibit No. 1 was pretrial discovery from the State, namely DHS and police reports about the investigation and arrest of defendant in June 2015. The reports indicated that defendant was approached on June 12, 2015, because of his

"immigration status" or "immigration violations" and that, before the arrest, Powell confirmed that defendant was "illegally in the United States." Defendant argued that the reports were relevant because they did not mention Powell (who, according to Hall, had confirmed defendant's immigration status) or indicate that defendant was arrested for a criminal, as opposed to a civil, immigration violation. Exhibit No. 2 was the State's response to discovery and the State's witness list. Defendant acknowledged that these documents were already part of the common law record but maintained that they deserved particular attention because they did not mention Powell as a potential State witness. Exhibit No. 3 was a letter from DHS denying a defense subpoena for materials related to the June 2015 investigation of defendant. Defendant argued that the letter was relevant to show "why certain evidence [was not] able to be presented at [the] hearing[.]" Exhibit No. 4 was DHS's response to a subsequent defense subpoena. The response included DHS reports about the June 2015 investigation of defendant. The reports indicated that, during the investigation, defendant was confirmed to be "in the United States illegally." Defendant argued that the reports were relevant because they did not mention Powell or indicate that defendant was arrested for an immigration *crime*. Exhibit No. 5 was postsentencing discovery from the State, consisting of a grand jury transcript, photographs, and defendant's presentence investigation report. Defendant acknowledged that the documents were unrelated to defendant's arrest but supplied "just background information *** for [the court's] convenience." Exhibit No. 6 consisted of excerpts from the hearing on defendant's motion to quash and suppress. Exhibit No. 7 was a copy of *Montes I*.

¶ 19 The State presented no evidence. In closing argument, postconviction counsel stated in part:

"Everything that we know in this case suggests that [defendant] was arrested for being undocumented, a civil violation. Not that [the officers] had any probable cause to believe that [defendant] was committing a criminal violation of immigration law. There's nothing. And there's the old saying you can't get blood from a stone. I can't make up evidence and bring it in here to you, Judge. There isn't any."

¶ 20 The trial court denied the amended petition. After reviewing the seven defense exhibits, the court concluded that the record "has not really been further developed" on the issue of trial counsel's ineffectiveness. Specifically, defendant did not provide the court "with any additional information *** to clarify whether [the officers] detained [defendant] for a suspected criminal violation of immigration law or a suspected civil violation of immigration law." The court also determined that appellate counsel was not ineffective for relying on *Arizona*. The court believed that counsel cited *Arizona* "in good faith," and the court noted that the amended petition "[did] not cite any different or additional case law or other authority that [counsel] should have cited instead."

¶ 21 This appeal followed.

¶ 22 II. ANALYSIS

¶ 23 Appellate counsel moves to withdraw per *Pennsylvania v. Finley*, 481 U.S. 551 (1987), and *People v. Lee*, 251 Ill. App. 3d 63 (1993). In his motion, counsel states that he read the record and found no issue of arguable merit. Counsel further states that he advised defendant of his opinion. Counsel supports his motion with a memorandum of law providing a statement of facts, a list of potential issues, and arguments about why those issues lack arguable merit. We advised defendant that he had 30 days to respond to the motion. Defendant filed a written response.

¶ 24 Counsel advises us that he considered raising the following issues in this appeal: (1) whether the trial court erred in denying defendant's amended postconviction petition and

(2) whether postconviction counsel provided reasonable assistance. Counsel concluded that neither issue is potentially meritorious. We agree.

¶ 25     We begin by reviewing the principles that govern postconviction proceedings:

"Under the Act, criminal defendants may assert that their convictions were the result of a substantial denial of their federal or state constitutional rights. The Act provides a three-stage mechanism for a defendant to advance such a claim. At the first stage of postconviction proceedings, the circuit court must independently review the postconviction petition and shall dismiss it if it is 'frivolous or is patently without merit.' Accordingly, the petition advances to the second stage if (1) the court does not rule on the petition within [a] 90-day period, notwithstanding the petition's merit [citation], or (2) the facts alleged in the petition state an arguable claim of constitutional deprivation.

At the second stage, counsel may be appointed to assist an indigent defendant. *** At the second stage, the State may file a motion to dismiss or an answer to the petition. In deciding a motion to dismiss, the circuit court must determine whether the petition and accompanying documents make a substantial showing of a constitutional violation. If the petition makes the requisite showing, it is advanced for a third-stage evidentiary hearing. If not, dismissal is proper." (Citations omitted). *People v. Agee*, 2023 IL 128413, ¶¶ 36-37.

¶ 26     As our supreme court has explained, "[a] proceeding brought pursuant to [the Act] [citation] is not a direct appeal but a collateral attack on a judgment of conviction. [Citation.] The Act permits the petitioner to identify constitutional violations occurring at trial that could not be and were not previously adjudicated. [Citation.]" *People v. Hawkins*, 181 Ill. 2d 41, 50 (1998). Therefore, "issues that were raised and decided on direct appeal are barred from consideration by the doctrine of *res judicata*, while issues that could have been raised, but were not, are forfeited."

*People v. Taliani*, 2021 IL 125891, ¶ 53. In addition, "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2020).

¶ 27    This appeal arises from the denial of defendant's petition following a third-stage hearing. In such cases, if the trial court engages in fact-finding and credibility determinations, its decision will not be reversed unless it is manifestly erroneous. *People v. English*, 2013 IL 112890, ¶ 23.

> "However, if no such determinations are necessary at the third stage, *i.e.*, no new evidence is presented and the issues presented are pure questions of law, we will apply a *de novo* standard of review, unless the judge presiding over postconviction proceedings has some special expertise or familiarity with defendant's trial or sentencing and that familiarity has some bearing upon disposition of the postconviction petition. [Citation.]"*Id.*

¶ 28    With these principles in mind, we turn to the merits. Defendant's amended petition claimed that both trial counsel and counsel on direct appeal provided ineffective assistance. The *Strickland* test governs both claims. See *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *People v. Span*, 2021 IL App (2d) 180966, ¶ 11. To prevail on an ineffectiveness claim, a defendant must show that counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance was prejudicial in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.

¶ 29    We address first the claim that trial counsel was ineffective for failing to argue that defendant's immigration status did not supply probable cause to arrest him. We held in *Montes I* that the record on direct appeal was insufficient to resolve this question. *Montes I*, 2020 IL App (2d) 180565, ¶¶ 59-61. We provided guidance for a potential postconviction claim: defendant

would have to establish a reasonable probability that, if the State had had notice that it needed to show probable cause to arrest defendant for a *criminal* immigration violation, the State would have been unable to do so and, thus, the motion to quash and suppress would have been granted. *Id.* Defendant could establish that reasonable probability only by producing additional evidence as to the nature of defendant's immigration violation. *Id.* However, as the trial court noted in denying defendant's amended petition, defendant produced no such evidence. The record still reflects simply that defendant was arrested for an immigration violation, *i.e.*, being in the United States illegally. There is no indication whether it was a civil or criminal violation. Thus, the record does not demonstrate, any more than before, that the officers lacked probable cause to arrest defendant for a violation of immigration law. Accordingly, as on direct appeal, defendant has failed to establish prejudice within the meaning of *Strickland*, and thus, there is no arguably meritorious basis for challenging the denial of defendant's postconviction claim of ineffective assistance of trial counsel.

¶ 30   Appellate counsel next considered whether to argue that it was error to deny defendant's postconviction claim of ineffective assistance of counsel on direct appeal. The amended postconviction petition claimed that counsel on direct appeal performed deficiently by relying entirely on *Arizona*. According to the amended petition, *Arizona* was "distinguishable" because it "involved state and local officers trying to enforce civil immigration violations," whereas here "the two officers who stopped and arrested [defendant] testified that they were working as task-force officers with [DHS]." The amended petition does not explain, and we fail to see, how appellate counsel's reliance on *Arizona* was prejudicial, as the amended petition does not identify more relevant case law or other authority and, thus, points to nothing that counsel could have done differently to achieve a more favorable outcome for defendant. Thus, there is no arguably

meritorious basis for challenging the denial of defendant's postconviction claim of ineffective assistance of counsel on direct appeal.

¶ 31    We next consider whether there is any potentially meritorious basis for arguing that defendant did not receive the requisite level of assistance from counsel in the postconviction proceedings. The right to counsel in a postconviction proceeding is not constitutional but rather statutory in nature. *People v. Pinkonsly*, 207 Ill. 2d 555, 567 (2003). The Act requires postconviction counsel to provide "a reasonable level of assistance" to a defendant. *Agee*, 2023 IL 128413, ¶ 41. Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) exists "[t]o ensure that postconviction petitioners receive reasonable assistance of counsel." *Agee*, 2023 IL 128413, ¶ 42. That rule provides in pertinent part:

> "[The record on appeal] shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 32    Compliance with Rule 651(c) does not foreclose a challenge to the reasonableness of postconviction counsel's assistance. See, *e.g.*, *People v. Jean*, 2024 IL App (1st) 220807, ¶ 35 ("Although not enshrined in Rule 651(c), an attorney's admitted lack of preparation for the [second-stage] dismissal hearing cannot be considered reasonable."). However, a proper certificate of compliance with Rule 651(c) creates a rebuttable presumption that postconviction counsel provided reasonable assistance. *People v. Quezada*, 2024 IL App (2d) 210076-B, ¶ 14.

¶ 33    Here, postconviction counsel filed a proper certificate of compliance with Rule 651(c), and we find nothing in the record to rebut the resultant presumption that postconviction counsel provided reasonable assistance. We have determined that the trial court properly denied defendant's claims as amended by postconviction counsel, but we cannot discern on this record whether counsel breached her duty of reasonable assistance. Accordingly, there is no arguably meritorious basis for challenging postconviction counsel's performance.

¶ 34    In his response to the motion to withdraw, defendant contends that the search of his home was unlawful because it was executed with neither a warrant nor his consent. That issue was resolved adversely to defendant in the trial court and was not raised in defendant's direct appeal or, perhaps more significantly, in his amended postconviction petition. See *Taliani*, 2021 IL 125891, ¶ 53 (issues that could have been raised on direct appeal, but were not, are forfeited); 725 ILCS 5/122-3 (West 2020)) ("Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived."). Accordingly, there is no arguably meritorious basis for relitigating the issue of consent in this appeal from the denial of a postconviction petition that did not raise the issue.

¶ 35                                        II. CONCLUSION

¶ 36    For the reasons stated, we grant counsel's motion to withdraw and affirm the judgment of the circuit court of Kane County.

¶ 37    Affirmed.